819 So.2d 1181 (2001)
In re Petition for Reinstatement to Practice Law of Charles H. MORRISON.
No. 2000-BR-01702-SCT.
Supreme Court of Mississippi.
August 23, 2001.
Charles H. Morrison, pro se.
Christina J. Kelsey, Jackson, Attorney for Appellee.
*1182 EN BANC.
WALLER, J., for the court:
¶ 1. Charles H. Morrison was disbarred from the Mississippi Bar while working as a staff attorney for East Mississippi Legal Services in Meridian, Mississippi, for taking money from clients, failing or delaying to take action on behalf of clients, failing to tell the truth, and misleading clients concerning filings, hearings, and other matters. Believing he has met the requirements for the reinstatement of his license to practice law in Mississippi, Morrison now seeks to be readmitted to the practice of law. Because Morrison has failed to demonstrate that he has effectively rehabilitated himself, and due to the nature of the underlying offenses of disbarment, we deny his petition.

FACTS
¶ 2. Morrison was disbarred from practicing law in Mississippi on March 24, 1994, upon an opinion and judgment entered to a motion for default judgment to a formal complaint filed by the bar. A Northern Supreme Court District Complaint Tribunal consisting of Circuit Judge R. Kenneth Coleman, Honorable Betty W. Sanders, and Honorable Robert W. Elliot concluded that Morrison violated the Mississippi Rules of Professional Conduct, specifically Rules 1.3, 1.4, 1.15, 3.2 and 8.4(a), (c) and (d), and by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
¶ 3. All of the subject complaints occurred while Morrison worked as a staff attorney for East Mississippi Legal Services (EMLS) in Meridian, Mississippi, from March 1991 until November of 1992, providing civil representation to low-income individuals. Morrison resigned from EMLS in November of 1992 in lieu of dismissal after an investigation had been initiated into the manner in which Morrison was representing his clients. The investigation revealed the following: that Morrison had taken money from five different clients in the total amount of $415; he failed to take action on behalf of clients or delayed in taking such action; and he failed to tell the truth and misled clients concerning matters such as filings and hearings.
¶ 4. The investigation revealed that in July of 1992, Henry Stevens retained Morrison to file a Chapter 7 bankruptcy petition. Stevens paid Morrison the $120 filing fee and received assurances from Morrison that a petition would be filed to prevent garnishment of Steven's wages. Morrison retained the money and failed to file the bankruptcy petition until October of 1992, and only did so upon being questioned about the matter by the managing attorney at EMLS. Prior to the October filing, Morrison had advised Stevens that his bankruptcy case had been filed, that the first meeting of creditors had been scheduled, and that an order had been sent from the Bankruptcy Court to stop the garnishment.
¶ 5. In June of 1992, Ida Bell retained Morrison to file a bankruptcy case on her behalf. Bell paid Morrison a total of $60 toward the bankruptcy filing fee, which Morrison retained and failed to deposit into the EMLS client trust account. Bell's bankruptcy petition was not filed until late September of 1992, resulting in dismissal for failure to pay the filing fee, despite the $60 paid by Bell towards the $120 filing fee.
¶ 6. In July of 1992, Alesha Deason retained Morrison to file a Chapter 7 bankruptcy petition. Deason paid Morrison $60 towards the filing fee, which Morrison personally retained. In October of 1992, Morrison had Deason sign a blank bankruptcy petition, which he never filed.
¶ 7. In August of 1991, Lamar Reed retained Morrison to file a Chapter 7 *1183 bankruptcy, with Reed paying $30 towards the filing fee. Again, Morrison retained the $30 and never deposited it into the EMLS client trust account. Although Morrison represented to Reed that his bankruptcy case had been filed and the first meeting of creditors scheduled, no petition had been filed, and this resulted in the garnishment of Reed's wages.
¶ 8. In June of 1992, Kathleen Cole retained Morrison to defend her against a suit filed against her for breach of a promissory note. Morrison, on behalf of Cole, worked out a compromise with the opposing attorney, whereby Cole would bring the payments on the disputed promissory note current and pay all court costs, for a total of $175.00 by July of 1992. Pursuant to the compromise, Cole turned over to Morrison $175, with Morrison stating he would forward the money to the opposing counsel. Morrison failed to forward the money, causing opposing counsel to file a motion. Before the date set for hearing, the attorney for the complaining party dismissed the motion after receiving $150 from Morrison.
¶ 9. In addition, during the investigation by East Mississippi Legal Services into Morrison's actions, Morrison failed to disclose information and misled persons involved in the investigation.
¶ 10. As a result of these actions, the Tribunal found by clear and convincing evidence that Morrison demonstrated unprofessional and unethical conduct evincing unfitness for the practice of law for which the imposition of severe discipline was warranted. Morrison was ordered to pay to the Mississippi Bar all costs and expenses occasioned by the litigation of the complaint filed against him. Morrison was also ordered to return all files, papers, monies and other properties belonging to his clients. Morrison was further ordered to file either with the Tribunal or the Supreme Court of Mississippi an affidavit stating that all current Mississippi clients, every attorney and adverse party, have been notified of his disbarment.

BAR'S POSITION
¶ 11. The Mississippi Bar advises us that it "does not take a position concerning Morrison's petition for reinstatement to membership in the Bar and the re-issuance of his license to practice law in this State except as is required by Rule 12 of the Mississippi Rules of Discipline."

STANDARD OF REVIEW
¶ 12. The standard of reviewing questions of attorney reinstatement is well settled:
The Supreme Court of Mississippi (the Court) has exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys. When reviewing disciplinary matters this Court reviews the evidence de novo, on a case-by-case basis sitting as triers of fact.
In re Smith, 758 So.2d 396, 397 (Miss. 1999).

DISCUSSION
¶ 13. "The Court's fundamental inquiry is whether [the attorney] has rehabilitated himself in conduct and character since the suspension was imposed. A firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed is only required." In re Steele, 722 So.2d 662, 664 (Miss.1998).
¶ 14. Certain jurisdictional requirements must be met prior to reinstatement. The requirements are:
(1) Each petitioner must include a list of names and addresses of persons, parties, firms, or legal entities who suffered pecuniary loss due to the attorney's misconduct; *1184 (2) There must be a showing that the petitioner has made full amends and restitution or a statement to the effect that full amends and restitution is not appropriate or has been imposed; (3) The petitioner must show that he has the requisite moral character to be reinstated; and (4) The petitioner must show that he has the requisite legal learning to be reinstated to the privilege of practicing law. Mississippi Rules of Discipline 12.7.
In re Smith, 758 So.2d at 398.

1. Pecuniary loss

¶ 15. Subsequent to the disbarment and based upon the same set of facts as the disbarment, a four-count indictment for embezzlement was entered against Morrison. In exchange for Morrison agreeing to plead guilty to one count of embezzlement, Morrison was put on probation for a period of two years and ordered to make restitution to his victims in the sum of $415. Morrison paid restitution in the sum of $415 and court costs in the sum of $184.50. Morrison successfully completed his two-year probationary term, and in August 1998, a Probation Discharge Order was entered on his behalf as to Count I of the embezzlement charge. Shortly thereafter, an Order of Nolle Prosequi was entered as to Counts II, III and IV per the plea agreement in Count I. Morrison complied with this requirement by reimbursing the clients whose funds he misappropriated.

2. Full Amends

¶ 16. Morrison was ordered to pay the Bar's costs and expenses involved in the investigation and prosecution of the disbarment proceedings on or before May 31, 1994. Those costs and expenses amounted to $242.23. Morrison did not pay these costs and expenses until May 1, 2000. Although Morrison failed to pay the Bar's costs and expenses within the time frame ordered by the Complaint Tribunal, he did eventually pay the expenses. When faced with this exact issue, we declined to penalize the attorney who failed to timely pay the Bar's costs and expenses such as occurred here. See id. at 397.

3. Requisite Moral Character

¶ 17. The Bar deposed Morrison on December 4, 2000, as part of its investigation of Morrison's Petition for Reinstatement. Because of the difficulty in assessing one's moral character, the Bar considered the following sub-categories in attempting to provide this Court with information concerning Morrison's moral character.

A. Civic, Church and Charitable Involvement

¶ 18. Morrison testified that after being disbarred, he returned to his home state of Minnesota in order to care for his invalid mother. Morrison claimed to be a member of a Lutheran Church, but admitted that he had been having a difficult time attending services since his mother's death. Morrison testified that he was the primary care-giver for his mother up until her death in 1999, and that while alive, his mother required twenty-four hour care, seven days a week. Morrison admitted that he was not currently involved in any civic or professional organizations. His other civic involvement offered by way of affidavit includes: a $15 donation to the Professional Fire Fighters Association; donations of household furnishings and clothes to the Disabled American Veterans and Salvation Army; and non-specific participation in Habitat for Humanity and something called "Kid's Club."

B. Employment Since Disbarment

¶ 19. Since his disbarment, Morrison has worked for two furniture delivery companies and is currently employed by Home *1185 Depot as a sales associate. Morrison testified that the sole reason for leaving his previous two jobs was as a result of him needing to make more money, and that he was never the subject of any disciplinary action nor was he ever asked to leave. While working at Home Depot over the last three years, Morrison testified that he has received seven service awards, which are given to employees that demonstrate good sales ability and good rapport with customers.

C. Criminal History Since Disbarment

¶ 20. Morrison testified that he has received one speeding ticket since disbarment and one DUI conviction. Morrison testified that he received the DUI within the first year after his disbarment. While acknowledging he used extremely poor judgment, Morrison testified that he had been drinking because his mother had just suffered another stroke and that he was depressed about the status of his legal career. He stated that there was no car accident, but that he was changing a flat tire when an officer approached him and smelled alcohol. Morrison testified that this is the only DUI he has ever received, and that he paid the fine resulting from his conviction.

D. Personal Recommendations

¶ 21. Morrison provided the Bar with nine letters of recommendation. Two of the letters were from Mississippi attorneys who had practiced with Morrison prior to his disbarment. One letter was from his banker. The other six letters were from both his current and former employers since returning to Minnesota. One of the letters was from an assistant manager at Home Depot confirming that Morrison had in fact received seven service awards while a Home Depot employee.

E. Mental and Emotional Status

¶ 22. The Bar noted that during Morrison's deposition, he appeared to be mentally and emotionally stable. Morrison testified that he was not suffering from any serious medical, alcohol, or drug related problems. He further testified that he was not currently under a doctor's care, and that although depressed at one time, he never received any psychiatric help nor was ever placed on any type of medication.

F. Future Plans

¶ 23. Morrison testified that if reinstated, he did intend to resume practicing law. He stated that he had been in contact with the Mississippi Department of Human Services regarding a legal position on the Gulf Coast. Morrison also testified that he may pursue some type of legal job with Home Depot in their Atlanta, Georgia, home office.

G. Financial Situation

¶ 24. Morrison testified that he was current on all of his taxes and that he was currently earning in excess of $15.00 an hour as a sales associate at Home Depot. Morrison indicated that he has not been personally involved in any lawsuit since his disbarment nor has he had any judgments rendered against him since being disbarred.

4. Requisite Legal Training

¶ 25. Morrison, a graduate of the Oklahoma City University Law School, testified that during the period of his disbarment he has read various legal journals, articles and statutes concerning matters of legal interest to him. Morrison indicated that living in Minnesota made access to Mississippi legal issues difficult. However, Morrison did testify that on occasion he would visit a local law school library and peruse materials relating to the law in Mississippi. *1186 The requirement of legal training will be sufficiently satisfied if Morrison takes and passes the Mississippi Bar exam.
¶ 26. Six years have passed since his disbarment and Morrison now petitions for reinstatement of his license to practice law. Since his disbarment, he has lived in his home state of Minnesota and asserts he has performed all of the requirements necessary for reinstatement. The burden of proving that he has rehabilitated himself and reestablished the requisite moral character sufficient to entitle him to reinstatement is upon the petitioner. In re Parsons, 797 So.2d 203 (Miss.2000).
¶ 27. The Bar neither supports nor opposes Morrison's petition for reinstatement. The question before this Court is whether Morrison has sufficiently rehabilitated his conduct and character since disbarment. We declared the importance of demonstrating sufficient rehabilitation before reinstating the license of a disbarred attorney in In re Tucker, 656 So.2d 799, 805 (Miss.1995), as follows:
The legal profession has come a long way from the days when attorneys were automatically presumed honorable. The quality and reputation of the Mississippi Bar and the public interest which it serves warrant stringent standards for reinstatement following disbarment. This Court remains firm in its resolve that one who has acted in a manner sufficiently egregious to warrant disbarment must clearly show a rehabilitation of character before reinstatement to the privilege of practicing law. Compromise of the standards to which attorneys are held will surely cripple the profession, with concomitant harm to the public.
¶ 28. We find that Morrison has failed to satisfy us that he has effectively rehabilitated himself "to the point that he should enjoy a license to practice law." In re Massey, 722 So.2d 452, 453 (Miss.1998). In coming to this conclusion, we note the seriousness of his offense. While the felony embezzlement charges were dismissed or nolle prosequied, these were felony level charges involving fraud, deceit, and dishonesty, which he also attempted to hide from an investigation. Secondly, Morrison has essentially no civic, church, or charitable involvement. The letters of recommendation are skeletal, one to three sentence generalizations, without objective substance to be persuasive as to the issue of his character rehabilitation. Morrison presents very little relevant evidence that he has met the requisite rehabilitation for reinstatement of his license to practice law.

CONCLUSION
¶ 29. For these reasons, Charles H. Morrison's petition for reinstatement to the practice of law is denied.
¶ 30. PETITION FOR REINSTATEMENT TO THE PRACTICE OF LAW DENIED.
PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, COBB and DIAZ, JJ., concur. McRAE, P.J., concurs in result only. EASLEY, J., dissents without separate written opinion.