WALLER, Presiding Justice,
for the Court.
¶ 1. Joe Gregory Stewart seeks reinstatement to the practice of law. Because Stewart’s petition lacks sufficient justification for reinstatement, we deny the requested relief.

FACTS AND PROCEDURAL HISTORY

¶ 2. Stewart pleaded guilty to one count of conspiracy to commit extortion under color of official right in the United States District Court for the Northern District of Mississippi. See United States v. Stewart, No. 2:03CR00048-001 (N.D.Miss.2004). This felony charge was made against him for engaging in a pattern of paying Ferrell Hunter, a Tunica County Sheriffs deputy who cited Stewart’s clients for driving under the influence (DUD, to intentionally absent himself from the justice court proceedings on the DUI citations.[1] Hunter’s absence resulted in the dismissal of the cases against Stewart’s clients. Stewart testified he self-reported this illegal activity to the Federal Bureau of Investigation. He was sentenced to serve three years on probation and to pay a $20,000 fine and a $100 special assessment. The probation term ended March 3, 2007.
¶ 3. Shortly after Stewart’s guilty plea, the Mississippi Bar filed a complaint to have. Stewart disbarred. Stewart did not respond to the complaint, and this Court disbarred him by order entered September 1, 2004. See Miss. Bar v. Stewart, 890 So.2d 900 (Miss.2004). Stewart did not file a motion for rehearing. This order imposed no additional conditions precedent to Stewart’s petition for reinstatement.
¶ 4. Stewart filed his petition for reinstatement to the practice of law with this Court on January 22, 2008. The Bar deposed him eight days later and filed a response. Miss. R. Disc. 3; 12.8. Within the response, the Bar generally acknowledged that Stewart had met the jurisdictional prerequisites for filing his petition, and noted that Stewart had not taken the Mississippi Bar Examination. The Bar opposes his reinstatement on the basis that his misconduct was too egregious for readmission to be considered:
It is the Bar’s position that Mr. Stewart should not be reinstated to the practice of law. While Mr. Stewart’s handling of his personal matters since his disbarment and his expressed desire to enter the military should he be readmitted are admirable, the underlying misconduct which led to his criminal conviction violated the basic principles that attorneys must live by in order to honorably serve their clients, the courts, and the legal system. His misconduct was of such a serious nature that the Bar cannot support his reinstatement.

STANDARD OF REVIEW

 ¶ 5. The disbarred attorney seeking reinstatement carries the burden of proving that he has rehabilitated himself *347 and has established the requisite moral character to entitle him to the privilege of practicing law. In re Holleman, 826 So.2d 1248, 1246 (Miss.2002). We review attorney petitions for reinstatement under a de novo standard and are not bound by any manifest-error or substantial-evidence rule. See In re Baker, 649 So.2d 850, 852 (Miss.1995).

DISCUSSION

I. JURISDICTIONAL PREREQUISITES
¶ 6. We find that Stewart’s petition met the jurisdictional prerequisites for consideration. His petition was filed more than three years after this Court ordered his disbarment. Miss. R. Disc. 12.1. He took and passed the Multi-State Professional Responsibility Exam in November of 2007, with a scaled score of not less than 80. Miss. R. Disc. 12.5. While he has not taken the Mississippi Bar Exam, nothing in the rules of discipline require him to take this prior to petitioning this Court for reinstatement, and it is this Court’s practice to grant reinstatement on the condition that the petitioner subsequently pass the bar exam. Miss. R. Disc. 12.5; see, e.g., In re McGuire, 912 So.2d 902 (Miss.2005).
II. JURISDICTIONAL REQUIREMENTS ADDRESSED FOR REINSTATEMENT
¶ 7. As this Court has stated in the past, certain factors must be met prior to reinstatement:
The petitioner must: (1) state the cause or causes for suspension or disbarment; (2) give the name and current address of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct; (3) make full amends and restitution; (4) show that he has the necessary moral character for the practice of law; and (5) demonstrate the requisite legal education to be reinstated to the privilege of practicing law.
In re Benson, 890 So.2d, 888, 890 (Miss.2004). Using these factors, this Court weighs Stewart’s petition for reinstatement.
A. Cause for Disbarment.
¶ 8. Stewart’s petition for reinstatement identifies his guilty plea as the cause for his disbarment. The offense for which Stewart pleaded guilty was not only a felony conviction of extortion, but one which undermined the integrity of our legal system.
B. Name of Anyone Suffering Pecuniary Loss.
¶ 9. Stewart alleges that no person, party, firm, or legal entity suffered pecuniary loss due to his improper conduct. Miss. R. Disc. 12.7. However, there is the possibility, assuming Stewart’s clients were guilty, that the State suffered pecuniary loss in the amount of the applicable fine. Miss.Code Ann. § 99-19-73(1) (Rev. 2007). See e.g., Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155 (Miss.2004) (court imposed fine equaling amount lost to municipality in fines and court costs); see also Miss. Comm’n on Judicial Performance v. Hartzog, 904 So.2d 981, 986 (Miss.2004) (suspended judge fined costs incurred by county to employ interim judge). Stewart made no mention of this or any other potential costs to the community in his petition for reinstatement. He paid the fine and special assessment imposed by the federal district court and paid the full costs and expenses related to his disbarment. Miss. R. Disc. 12.7.
*348 C. Full Amends and Restitution.
¶ 10. The petition for reinstatement indicates Stewart paid the $500 investigatory fee to the Bar, as well as his fíne and special assessment arising from the underlying felony. Miss. R. Disc. 12.7. No determination has been made of any pecuniary loss incurred by the state.
D. Rehabilitation and Requisite Moral Character.
¶ 11. The ultimate inquiry for this Court is whether Stewart has demonstrated sufficient rehabilitation in character and conduct for consideration of readmission:
This Court’s fundamental inquiry is whether the attorney has rehabilitated himself in conduct and character since the suspension was imposed. In re Mathes, 653 So.2d 928, 929 (Miss.1995). A firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed is only required. In re Underwood, 649 So.2d 825, 828-29 (Miss.1995).
In re Flautt, 890 So.2d 928, 930 (Miss. 2004).
¶ 12. Stewart submitted his own affidavit in support of his petition for reinstatement. The Bar also deposed Stewart as part of its investigation of Stewart’s Petition for Reinstatement. We subdivide the relevant information provided in his petition and testimony as follows:
1.Civic, Church, and Charitable Involvement.
¶ 13. Stewart testified that before he began serving his three-year probation period, he and his family moved from Oxford to Gulfport, Mississippi. As evidence of his rehabilitation, Stewart cites community service, church involvement, and accommodations provided by the hotel he manages. Stewart performed fifty hours of community service as part of his court-ordered probation at a Gulfport Catholic church of which he is not a member. He stated that he is actively involved with his own church and that he is especially involved with his Sunday school class. Stewart submitted letters of appreciation from: (1) a speaker at a continuing legal education seminar for consideration and assistance in hosting the seminar at the hotel; (2) the president of Mississippi Power Company for holding rooms open at the hotel for its employees after Hurricane Katrina; (3) a church’s hurricane cleanup crew for the use of the hotel’s pool; (4) the Bayou View Elementary PTA for a $500 donation; (5) the executive director of Beauvoir for a donation of rooms at the hotel for out-of-town visitors and restoration crews to Beauvoir; and (6) the executive director of the Harrison County Habitat for Humanity for hosting weekly pool parties at the hotel for its staff. He also submits a certificate of appreciation dated August 10, 2006, from the Sons of the American Revolution for “outstanding support” when the hotel hosted pool parties for them. Stewart provided little or no information regarding the nature or extent of his personal involvement in the listed events.
2. Employment Since Disbarment.
¶ 14. Since his disbarment, Stewart has not engaged in the practice of law. He has worked at the Holiday Inn owned by his wife both during and after his probationary period. Stewart did not have any open cases at the time of disbarment and had successfully transferred all existing clients to his former law partner.
3. Personal Recommendations.
¶ 15. Stewart submitted letters of recommendation from the chancellor of the University of Mississippi, one faculty mem *349 ber of the University of Mississippi, one faculty member of the Mississippi College School of Law, a retired chancellor, and six members of the Bar in support of his petition for reinstatement.[2] These letters speak highly of Stewart’s family and personal character, and recommend without reservation Stewart’s reinstatement. These letters relate additional activities Stewart undertook that demonstrate his good character, including hosting weekly cookouts for cleanup volunteers and hosting foreign students. After publishing Stewart’s intention to seek reinstatement for public comment, the Bar received one letter supporting Stewart’s petition from another lawyer and no letters in opposition.
4. Mental and Emotional Status.
¶ 16. The Bar states Stewart appeared mentally and emotionally stable at his deposition. He testified that he was not using, nor had he used, illegal or prescription drugs before or after his disbarment. He further stated that while stressed by the proceedings he had not been diagnosed with depression.
5. Other Actions Touching on Reformation.
¶ 17. Stewart testified that he has not been arrested since the disbarment nor cited with any misdemeanor except for a single speeding ticket which he promptly paid. He stated that he is current with all debts and taxes, although he did file for bankruptcy prior to the disbarment. He has been sued by a former employee of the hotel who was implicated for embezzlement. Stewart has representation for this matter, and was unaware of the current status of the case. He was also privately reprimanded by the Mississippi Bar concerning unauthorized interactions of his former assistant and a client. The client was reimbursed all payments made to Stewart’s firm. Stewart stated he has been rehabilitated because he self-reported his crime and cooperated with the FBI. He distanced himself from “that same situation” and moved to the coast before his probationary sentence began.
E. Future Plans.
¶ 18. Stewart plans to represent himself in future business dealings with his hotel development business, and possibly work for another real-estate attorney. If not reinstated, he will “continue to build hotels.” Stewart submitted in his deposition that he should be reinstated because he would be a good example of someone who had erred ethically and was able to be rehabilitated and reinstated to the practice of law. Stewart submitted to the Bar that:
I would like to be seen as a good example of how to really screw it up and how to come back the right way. The loss of honor is one thing, but I think people should know from my example that you don’t have to stay outside. You can earn your way back in, and you should try. And even if it’s not granted, you should still try. And hopefully that’s what I’ve demonstrated.
F. Requisite Legal Education for Reinstatement.
¶ 19. Stewart attests that he has satisfied the fifth criteria of maintaining his legal skills “by reading advance sheets of Mississippi opinions.” He attended one probate continuing legal education seminar in 2005 and another general-law update *350 seminar. He read internet websites which discuss Mississippi law, and read legal reporting in the newspaper. He passed the Multi-State Professional Responsibility-Exam in 2007, with a scaled score not less than 80, which is required for reinstatement. We find Stewart’s demonstrated legal learning to be modest, but not so lacking as to prevent reinstatement on this-ground alone.[3]
III. ANALYSIS AND DECISION.
¶ 20. While the Bar has opposed reinstatement of Stewart on the basis of his flagrant conduct, he is eligible to seek reinstatement under the Rules of Discipline existing at the time of his disbarment.[4] The actions for which Stewart was disbarred were very grievous in nature. His illegal activity circumvented the justice system’s fairness and impartiality and injured the Bar’s reputation for professionalism. We must weigh Stewart’s rehabilitated moral character against these misdeeds. We previously stated the necessity of demonstrating sufficient rehabilitation of character before reinstatement to the practice of law in In re Tucker:
The legal profession has come a long way from the days when attorneys were automatically presumed honorable. The quality and reputation of the Mississippi Bar and the public interest which it serves warrant stringent standards for reinstatement following disbarment. This Court remains firm in its resolve that one who has acted in a manner sufficiently egregious to warrant disbarment must clearly show a rehabilitation of character before reinstatement to the privilege of practicing law. Compromise of the standards to which attorneys are held will surely cripple the profession, with concomitant harm to the public.
In re Morrison, 819 So.2d at 1186 (quoting In re Tucker, 656 So.2d 799, 805 (Miss. 1995)). Stewart must establish an active and sustained personal commitment through concrete actions to prove that his character has been rehabilitated.
¶ 21. We recently have dealt with the reinstatement of members of the Bar who committed serious, felonious actions which are arguably comparable to the actions of Stewart. Jimmy D. McGuire was disbarred from the practice of law based on a felony conviction for filing false currency reports to the Internal Revenue Service. In re McGuire, 912 So.2d at 903. This felony included conspiring to shield drug money, money-laundering schemes and attempting to obstruct justice in his trial. In re McGuire, 912 So.2d at 903 (citing McGuire v. Miss. Bar, 798 So.2d 476, 477 (Miss.2001)). McGuire was denied reinstatement twice before this Court found that he had rehabilitated his character sufficiently to be allowed back into the Bar. McGuire showed an active, sustained effort to rehabilitate himself and to prove the requisite moral character for readmission.
[McGuire] is an active member of Gateway United Methodist Church in Gulfport, where he serves as an usher, church historian and Chairman of the finance committee. He has also volunteered for vacation bible school, is a member of the United Methodist’s Men’s group and has recently become certified as a lay speaker in the Methodist Church.
*351 McGuire is a volunteer with the M.L. Tootle Mission project, tutor and substitute teacher, and volunteer with Memorial Hospice. McGuire has also made charitable donations to Make-a-Wish Foundation, Alzheimer’s Foundation, American Diabetes Association, Christopher Reeve Foundation, Habitat for Humanity and the Ocean Springs Honor Choir. McGuire testified that he spends approximately 10-14 hours per week doing charitable work, which he will continue to do if he is reinstated to the practice of law.
McGuire attached approximately sixty-six letters of recommendation to his Petition for Reinstatement. These letters were from law enforcement officers, former and current Circuit and Chancery Clerk personnel, professional and business persons, and persons from McGuire’s church. Approximately fifteen of the letters were from members of the Bar. Most of these letters acknowledged the severity of McGuire’s conduct leading to his disbarment and his remorse regarding the crimes he committed.
[[Image here]]
McGuire stated that his future plans were to reestablish a practice on the Mississippi Gulf Coast, but that prior to doing so he would seek out a firm of reputable lawyers to work for so that he could be supervised and brought up to speed as to the practice of law. He also expressed an interest in serving as a public defender. He indicated he does not intend to represent anyone who is charged with a drug violation. McGuire further stated that he was considering entering a Ph.D. program at Temple University in constitutional law.
In re McGuire, 912 So.2d at 904-905.
¶ 22. The evidence of Stewart’s civic and community involvement centers around gratuities made by his family-owned hotel, including hosting pool parties and reserving blocks of rooms for workers on the coast after Hurricane Katrina. Furthermore, because the hotel is owned by his wife, it is unclear whether these gratuities are solely attributable to him. Stewart must show that his good deeds have arisen from his own efforts and resources and demonstrate clearly a reformation of character and conduct since his disbarment. Rehabilitative actions showing some relationship with the wrong committed would have weighed more heavily in Stewart’s favor. See In Re Woolbright, 890 So.2d 884, 886-887 (Miss.2004) (Petitioner volunteered at alcohol and drug counseling program after being disbarred for felony DUI arrest.).
¶ 23. Stewart must show that his actions, beyond being good deeds of a general nature, evidence a fundamental change in his character. “The Court’s fundamental inquiry is whether [the attorney] has rehabilitated himself in conduct and character since the suspension was imposed. A firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed is only required.” In re Morrison, 819 So.2d 1181 (Miss.2001), quoting In re Steele, 722 So.2d 662, 664 (Miss.1998) (emphasis added). Stewart has failed to evidence the firm resolve we require.
¶ 24. Stewart performed no community service beyond what was required of him during his sentencing for the underlying felony and has indicated no intent to do so in the future. See In re McGuire, 912 So.2d at 904-905 (performed 10-14 hours of community service per week with the intention to continue service after reinstatement.) Stewart is correct in stating that his rehabilitation began when he self-reported his illegal activity to the FBI. *352 Stewart’s rehabilitation path naturally would be shorter than those who either refuse to acknowledge the gravity of their wrongdoing, or those who must be caught before repenting. However, acknowledgment of one’s mistakes is only the first step to rehabilitation.
¶ 25. Though Stewart has successfully shown some rehabilitation and outward improvement in his conduct, we find he has failed to show the requisite rehabilitated moral character to be reinstated. See In re McGuire, 912 So.2d at 904-905.

CONCLUSION

¶ 26. After our plenary review, we find the evidence in the record does not warrant Stewart’s reinstatement to the practice of law because of a lack of demonstrated rehabilitation of character. Due to the seriousness of his offense, we find that the civic, church, and charitable involvement offered by Stewart lacked sufficient substance to clearly show a fundamental change in his character.
¶ 27. PETITION FOR REINSTATEMENT TO THE PRACTICE OF LAW DENIED.
SMITH, C.J., CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J., AND GRAVES, J. EASLEY, J., NOT PARTICIPATING.

. This illegal activity occurred before April 4, 2002. See Miss. R. Disc. 12(c).

. These individuals are Robert Khayat, Guthrie Abbott, Shelton Hand, Norman Gillespie, Richelle Lumpkin, Keith Wiseman, John Cocke, William Hooper, Jr., Andre de Gruy, and Carl Ford, respectively.

. Though not an issue here, as a condition precedent to his reinstatement, Stewart would be required to take and pass the Mississippi Bar Exam. Miss. R. Disc. 12.5.

. Miss. R. Disc 12(c) was amended April 4, 2002. This rule may have made Stewart ineligible for reinstatement if such conduct had occurred after the effective date of the amendment.