WALLER, Chief Justice,
for the Court:
¶ 1. This is Joe Gregory Stewart’s second petition for reinstatement to the practice of law. Stewart v. Miss. Bar, 5 So.3d 344 (Miss.2008) (Stewart I). Stewart has made great strides toward rehabilitating his character, and has demonstrated a changed life in many ways. Yet because he made a false statement to the Mississippi Bar and failed to cooperate with the Bar during its investigation of his petition, we deny Stewart’s request for reinstatement.
FACTS & PROCEDURAL HISTORY
¶ 2. Joe Gregory Stewart was disbarred in 2004 after he pleaded guilty in federal court to one count of conspiracy to commit extortion under color of official right. Miss. Bar v. Stewart, 890 So.2d 900 (Miss.2004). Stewart admits that, in 1998, he paid a Tunica County sheriffs deputy to absent himself as a witness in five DUI matters in justice court. Stewart I, 5 So.3d at 346. The deputy sheriffs absence led to the dismissal of those cases. Id. Stewart self-reported his illegal activity to the Federal Bureau of Investigation (FBI). Id. He eventually was sentenced to three years probation and ordered to pay a *12 $20,000 fine and a $100 special assessment. Id.
¶ 3. This Court denied Stewart’s first petition for reinstatement, finding that he had failed clearly to establish a rehabilitated character. Id. at 352. Stewart contends that this, his second petition, demonstrates sufficient evidence of rehabilitation in character to warrant his reinstatement to the Bar.
¶ 4. The Bar continues to oppose Stewart’s reinstatement. The Bar opposed his first petition for reinstatement on the basis that Stewart’s misconduct was simply too egregious. Stewart I, 5 So.3d at 346. The Bar maintains that stance and, after further investigation, now gives additional reasons for its opposition: (1) Stewart failed to make any meaningful attempt to compensate the State for its pecuniary loss resulting from his misconduct; (2) he has not been forthcoming about his prior criminal history; (3) he has been untruthful and misleading about his prior military experience; and (4) in soliciting letters of recommendation, he communicated his desire to enlist in the Mississippi National Guard if reinstated, despite knowing that he was ineligible to do so because of his prior felony conviction.
DISCUSSION
¶ 5. This Court has “ ‘exclusive and inherent jurisdiction’ ” over attorney-reinstatement cases. In re Morrison, 819 So.2d 1181, 1183 (Miss.2001) (quoting In re Smith, 758 So.2d 396, 397 (Miss.1999)). We review these matters de novo, on a case-by-case basis. In re Morrison, 819 So.2d at 1183 (quoting In re Smith, 758 So.2d at 397).
¶ 6. A petitioner seeking reinstatement “carries the burden of proving that he has rehabilitated himself and has established the requisite moral character to entitle him to the privilege of practicing law.” Stewart I, 5 So.3d at 346-47 (citing In re Holleman, 826 So.2d 1243, 1246 (Miss.2002)). He or she must demonstrate “ ‘[a] firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed. . . .'" In re Petition of Massey, 670 So.2d 843, 845 (Miss.1996) (quoting Phillips v. Miss. Bar, 427 So.2d 1380, 1382 (Miss.1983)). Part of doing so involves meeting the jurisdictional requirements under Rule 12 of the Mississippi Rules of Discipline. Miss. R. Disc. 12; In re Benson, 890 So.2d 888, 890 (Miss.2004) (citing In re Holleman, 826 So.2d 1243, 1247 (Miss.2002)).
¶ 7. Rule 12 requires a petitioner to (1) state the cause or causes for suspension or disbarment; (2) provide the names and current addresses of all persons, parties, firms, or legal entities who suffered pecuniary loss as a result of the improper conduct; (3) make full amends and restitution; (4) demonstrate that he or she has the necessary moral character to practice law; and (5) show that he or she possesses the requisite legal education to be reinstated. Miss. R. Disc. 12.7; see also In re Benson, 890 So.2d at 890. The Bar’s position, while not a jurisdictional requirement, is a factor in deciding whether to grant reinstatement. In re Benson, 890 So.2d at 890 (citing In re Holleman, 826 So.2d at 1248).
¶ 8. It is important to point out that Stewart most likely would not be eligible for reinstatement had he committed his felony offense under our current Rules of Discipline. See Miss. R. Disc. 12(c). But he is eligible to seek reinstatement based on the rules that were in effect at the time of his offense.
I. Cause for disbarment
¶ 9. As already mentioned, the cause for Stewart’s disbarment was his guilty plea to *13 the felony of extortion. Stewart I, 5 So.3d at 347.
II. Full amends and restitution to anyone suffering pecuniary loss
¶ 10. In his first petition, Stewart alleged that no person, party, firm, or legal entity had suffered pecuniary loss due to his misconduct. Stewart I, 5 So.3d at 347. But we pointed out that if Stewart’s clients were in fact guilty, the State has incurred a financial loss in the form of unpaid fines. Id. at 347 (citing Miss.Code Ann. § 99-19-73(1) (Rev.2007)). We added that “[n]o determination has been made of any pecuniary loss incurred by the [S]tate.” Stewart I, 5 So.3d at 348.
¶ 11. Stewart says that he is “extremely remorseful” for the State’s financial loss and is prepared to pay whatever is required, but only after an appropriate authority has determined the amount, if anything, he owes. Otherwise, according to Stewart, the State’s financial loss is purely speculative. He also argues that his clients, not he, would have had to pay any applicable fines.
¶ 12. Though Stewart would have bene-fitted from some type of good-faith effort to address the Court’s stated concerns regarding the State’s financial loss, we agree that he should not be held accountable for failing to pay for hypothetical losses. There is nothing in the record to indicate a determination of guilt in any of the DUI cases. Stewart’s clients must be presumed innocent “unless and until the government proves beyond a reasonable doubt each element of the offense charged.” Clark v. Arizona, 548 U.S. 735, 766, 126 S.Ct. 2709, 165 L.Ed.2d 842 (2006) (citations omitted). Furthermore, no court or tribunal, including this Court, has ever determined the amount of the State’s pecuniary loss or directly ordered Stewart to reimburse this loss. Stewart I cited several cases to support that the State can suffer pecuniary loss because of lost fines. Id. at 347 (citing Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004); Miss. Comm’n on Judicial Performance v. Hartzog, 904 So.2d 981, 984, 986 (Miss.2004)). But the cases cited in Stewart I involved instances in which this Court explicitly required disciplined judges to reimburse their respective municipalities and counties for financial losses resulting from those judges’ misconduct. Stewart I, 5 So.3d at 347 (citing Gibson, 883 So.2d at 1158; Hartzog, 904 So.2d at 986). Here, in contrast, no explicit orders to pay have been made.
¶ 13. Because Stewart has paid all of the fines and costs he owes, we find that he has made full amends and restitution.
III. Rehabilitation and requisite moral character
¶ 14. The most important inquiry in reinstatement cases is whether the petitioner has “demonstrated sufficient rehabilitation in character and conduct.” Stewart I, 5 So.3d at 348.
A. Expungement
¶ 15. The Bar deposed Stewart twice in its investigation of this petition. During his first deposition, the Bar asked Stewart whether he had ever had anything nonadjudicated or expunged. Stewart replied, “No.”
¶ 16. After this first deposition, the Bar received two letters opposing Stewart’s reinstatement. One letter was from retired Mississippi Supreme Court Justice Kay Cobb; the other was from Robert Norman, a senior Assistant United States Attorney in the Northern District of Mississippi. Norman served as an assistant district attorney for Lafayette County during the 1980s, and Cobb served as an *14 attorney with the Mississippi Bureau of Narcotics (MBN) during this same time period. Both Norman and Cobb recalled that Stewart had had a conviction expunged during the 1980s. The Bar forwarded copies of Norman’s and Cobb’s letters to Stewart prior to conducting a second deposition.
¶ 17. At the second deposition, the Bar confronted Stewart about the prior ex-pungement. Stewart explained that he previously had answered “no” because he did not believe that he had had anything expunged. The word “expungement,” he said, had never been used with him. Stewart said that, since then, he had retrieved some paperwork from his deceased grandfather’s files and learned that he did, in fact, have an expunged record. He confirmed the existence of two orders concerning the expunction.
¶ 18. Although Stewart acknowledged the expunged record, he refused to discuss the underlying conduct. When the Bar asked Stewart if he had been convicted of a criminal act other than the one leading to his disbarment, he invoked the protections of Section 41-29-150(d)(2) of the Mississippi Code. This law provides that a person benefitting from an expungement order shall not be “guilty of perjury or otherwise giving a false statement by reason of his failures to recite or acknowledge such arrest, or indictment or trial in response to any inquiry made of him for any purpose.” Miss.Code Ann. § 41—29—150(d)(2) (Rev. 2009); see also Miss.Code Ann. § 99-19-71(3) (Rev.2007). Stewart also, initially at least, refused even to provide the Bar a copy of the two expungement-related orders. He argued that an expungement is confidential, and that he was not free to share those orders without being held in contempt of court.
¶ 19. Stewart further suggested that Norman and Cobb inadvertently had subjected themselves to a Bar complaint or to contempt proceedings for divulging confidential, privileged information. He argued that Norman and Cobb both had learned of his expungement during the course of their attorney-client relationship with the State, and that they could disclose this information only with their client’s consent.
¶ 20. The same day as this second deposition, Stewart filed in this Court a Motion to Seal File and Record of Court or, In the Alternative, to Seal the Exhibits Attached Hereto. The attached exhibits included Norman’s and Cobb’s letters, and the two expungement-related orders. We denied Stewart’s motion.
¶ 21. Stewart continues to insist that an expungement is not public record, and that it can be used only for the limited purposes prescribed by law. He contends that even asking someone if they have an expunged matter may violate that person’s due-process and equal-protection rights. He asks that this Court appoint a master or tribunal to conduct a fair and impartial hearing on this particular issue.
¶ 22. The effect of an expungement order is to “to restore the person, in the contemplation of the law, to the status he occupied before” his or her arrest. Miss. Code Ann. § 41-29-150(d)(2) (Rev.2009); Miss.Code Ann. § 99-19-71(3) (Rev.2007). Mississippi law restricts who may access expungement orders and sets out the purposes for which that information may be used. Section 45-27-21 provides that the Mississippi Criminal Information Center is to retain a certified copy of expunction orders in a confidential database, to be accessible “only upon written request by a district attorney, a county prosecuting attorney, a municipal court prosecuting attorney, the Attorney General of Mississippi and the Mississippi Law Enforcement Standards and Training Board.” Miss. *15 Code Ann. § 45-27-21 (Supp.2010). The expunged conviction may be then be used “for the purpose of determining habitual offender status and for the use of the Mississippi Law Enforcement Standards and Training Board in giving or retaining law enforcement certification, and to ensure that a person is only eligible for first-offender status one (1) time.” Miss.Code Ann. § 45-27-21 (Supp.2010).
¶ 23. During its 2010 Session, the Mississippi Legislature passed a bill concerning the disclosure of expunged matters. House Bill 160 states that “[t]he existence of an order of expunction shall not preclude an employer from asking a prospective employee if the employee has had an order of expunction entered on his behalf.” Miss.Code Ann. § 99-19-71(3) (Supp.2010). It further requires that if a person with an expunction is called as a prospective juror, that person must, upon request, disclose the prior conviction and expunction to the court, in camera. Miss.Code Ann. § 99-19-71(3) (Supp.2010); Miss.Code Ann. § 41-29-150(d)(2) (Supp.2010).
¶24. These laws allow expunged records to be used, or asked about, only in certain instances, none of which include admission or reinstatement to the practice of law. While these laws seemingly prevent the Bar from inquiring about an ex-punction, they are not necessarily the final say. We have held that statutes are trumped by contradictory rules governing matters over which this Court has exclusive authority. See Miss. Bar v. McGuire, 647 So.2d 706, 707-08 (Miss.1994).
¶ 25. This Court has the exclusive authority to admit persons to the practice of law. Miss.Code Ann. § 73-3-2(1) (Rev. 2008). To administrate this process, the Court appoints a Board of Bar Admissions. Miss.Code Ann. § 73-3-2(3)(Rev.2008). The Board is given authority to promulgate necessary rules, subject to the Chief Justice’s approval, to carry out its duties. Id. These rules govern admission specifically, but they are relevant to reinstatement as well. See Ex parte Marshall, 165 Miss. 523, 147 So. 791, 794-95 (1933).
¶26. As part of its rules, the Board requires each applicant to complete, under oath, an application form approved by the Board. Rules Governing Admission to the Miss. Bar, Rule III, § 1. Rule III, Section 1, states that “[t]he applicant must give a full and direct response to all inquiries on the [application and furnish all additional documents required by the [application.” Rule III, § 1. The application to which Rule III, Section 1, refers requires the disclosure of expunged matters. Question 22a on the July 2011 Mississippi Bar Exam Application asks, “Have you, either as an adult or juvenile, been cited, arrested, charged or convicted for any violation of any law (except traffic violations)? NOTE: This should include matters that have been expunged or been subject to a diversionary program.”[1] The application further instructs that if the answer to Question 22a is “yes,” the applicant must fill out Form 22.[2] Form 22 is a one-page form that asks for specific details concerning the violation.[3] The failure fully to disclose all information called for in any of these application forms constitutes sufficient grounds for denial of admission to practice law. Rule V, § 1, B.
*16 ¶ 27. The Board of Bar Admissions then, with the implicit endorsement of this Court, has determined that the disclosure of expunged matters is necessary and proper to ensure that each admittee is of good moral character. This policy or rule falls within an area governed exclusively by this Court, and therefore, it supercedes any statutes to the contrary. See McGuire, 647 So.2d at 707-08.
¶ 28. Because this Court has exclusive authority over admission and reinstatement to practice law, we find that the Bar had the right to ask Stewart if he had an expunged record, and that the Bar could inquire about the underlying circumstances or offense. If every Mississippi employer has the right to ask such questions to its prospective employees, as Section 99-19-71(3) now provides, surely an institution of public trust such as the Bar should be able to do likewise for its prospective members.
¶ 29. The practice of law is a revocable privilege, not a right. E.g., Miss. State Bar v. Attorney-Respondent in Disciplinary Proceedings, 367 So.2d 179, 183 (Miss.1979) (citing Petition for Disbarment of J.R. Poole, 222 Miss. 678, 76 So.2d 850 (1955)). By seeking readmission to practice law, Stewart opened his past to inspection and could not refuse to disclose expunged criminal records. In re Rodriguez, 753 N.E.2d 1289, 1290 (Ind.2001); see also Application of Watson, 31 Ohio St.3d 220, 509 N.E.2d 1240 (1987). Requiring such disclosure furthermore did not violate Stewart’s constitutional rights. An Oregon federal district court faced with this very same argument concluded that “[determination of moral character is without question a legitimate state purpose in the context of a professional licensing scheme. The demand for disclosure of expunged offenses is a rational and reasonable method by which to promote this state purpose. It scarcely violates [an applicant’s] constitutional rights.” Wilson v. Wilson, 416 F.Supp. 984, 986 (D.C.Or.1976).
¶ 30. Because the Bar had a right to ask Stewart whether he had had anything expunged, Stewart had an obligation to answer the question truthfully. Stewart said that his reason for not doing so was that the word “expungement” had never been used with him. But the word “expunge,” or some derivation thereof, is used no less than nine times between the two expungement-related orders. The word “expunging” is even included in the title of one order. Stewart never claimed ignorance of having a prior offense cleared; so even if the word “expungement” never had been communicated to him, as he claims, Stewart still knew what effectively had occurred.
¶ 31. Stewart’s failure to respond truthfully to the Bar’s clear, direct question reflects negatively on his character and may alone be sufficient grounds for denial of reinstatement. See Rule V, § 1, B; see also In re Dean, 972 So.2d 590, 595-96, 600 (Miss.2008) (application for admission to the Bar denied, in part, because applicant answered falsely to three questions on his Bar application). Stewart only exacerbated the situation by refusing to cooperate with the Bar and answer its additional inquiries concerning the expungement. In refusing to talk about the underlying offense, Stewart invoked the protections of Section 41-29-150(d)(2). Miss.Code Ann. § 41-29-150(d)(2) (Supp.2010). That statute may protect Stewart from being found guilty of perjury or making a false statement, but it does not protect him from the negative inferences created by his lack of candor.
B. Prior military experience
¶ 32. An additional reason that the Bar opposes Stewart’s reinstatement is its perception that Stewart was untruthful *17 and misleading about his prior military experience.
¶ 38. At his first deposition, when asked whether he had ever served in the military, Stewart responded, “No.” During his second deposition, it was brought out, apparently by Stewart himself, that he had undergone basic training with the United States Marine Corps in 1987 at Quantico, Virginia. Stewart explained that he had completed basic training but was not allowed to participate in the commissioning ceremony. Stewart said that the Marines would not allow him to be commissioned because of certain information it had received from the Mississippi Bureau of Narcotics (MBN). Although Stewart refused to discuss details, this information appears to be related to the expunged matter. Whatever the case, this information made him ineligible to receive a security clearance.
¶ 34. Considering the record in its entirety, it does not appear that Stewart was attempting to deceive the Bar about his prior military experience. The Bar, in fact, already knew about his time with the Marines. In his first petition for reinstatement, Stewart filed a supplemental petition which included a copy of his enlistment form and a report referencing his separation or discharge from the Marines. Although Stewart’s answer to the Bar’s question about his prior military service is puzzling, we do not believe that he was attempting to hide this information or to mislead the Bar.
C. Civic, church, and charitable involvement
¶ 35. Many of Stewart’s civic, church, and charitable activities were noted in Stewart I: (1) fifty hours of community service[4] required as part of his court-ordered probation; (2) involvement in his church and Sunday-school class; (3) a $500 donation to the Bayou View Elementary Parent Teacher Association (PTA); and (4) offering hotel accommodations and amenities to several nonprofit and church groups. Stewart I, 5 So.3d at 348.
¶ 36. In addition to the activities cited in Stewart I, Stewart now details more of his civic, church, and community involvement: (1) joining his son and the Boy Scouts on a one-week, thirty-mile hike along the Appalachian Trail and on a week-long summer camp; (2) serving as a member of the Nutrition Board for the Gulfport City Schools; (3) serving on the Board of Directors of the Orange Grove-Lyman Chamber of Commerce; (4) volunteering for the Korean MIA Project, which helps connect the remains of lost servicemen with their families or hometowns; (5) participating in six community-theater productions; (6) volunteering regularly to clean up beaches in Harrison County; (7) serving as a poll worker during the 2008 general election; (8) serving actively in the Harrison County Republican Women;[5] (9) helping sponsor the Heritage Festival in Laurel, which celebrates Celtic music and heritage; (10) spearheading efforts to clean up a cemetery in Tallahatchie County where several of Stewart’s distant relatives are buried; (11) re-indexing a seventy-year-old Works Project Administration cookbook and a fifty-year-old Wesleyan Guild cookbook; and finally (12) serving as a member of the Sons of Confederate Veterans.
D. Letters of recommendation
¶ 37. In his first petition, Stewart sub *18 mitted ten letters of recommendation.[6] Stewart I, 5 So.3d at 348-49. Nine of the authors are members of the Mississippi Bar, and one, Keith Wiseman, is a member of the Georgia Bar. As noted in Stewart I, these individuals included a former chancellor of the University of Mississippi, a faculty member of the University of Mississippi School of Law, and a faculty member of the Mississippi College School of Law. Stewart I, 5 So.3d at 348-49. The Bar also received an additional letter supporting Stewart’s reinstatement. Id. at 349.
¶38. In his second petition, Stewart includes letters of recommendation from the same ten individuals as before, with the exception of Richelle Lumpkin. Stewart explained that Lumpkin had become a city judge since his first petition, and consequently, she was uncomfortable submitting a letter of support. Each of these individuals maintain their support for Stewart’s reinstatement and speak highly of his personal character, his commitment to family, and his charitable deeds. In addition to the individuals who submitted letters of support for his first attempt at reinstatement, Stewart now produces eighteen more letters of recommendation, eleven of which are authored by members of the Mississippi Bar.[7]
E. Employment since disbarment
¶ 39. After his disbarment, Stewart operated a hotel that he and his wife had purchased. He did this until they sold the hotel, sometime around March 2008. He and his wife used the proceeds from that sale to finance a triple-net lease on three Wendy’s restaurants. These three properties are currently his only source of income.
F. Future plans
¶ 40. In his first petition, Stewart said that, if reinstated, he planned to represent himself in future business dealings and, possibly, work for another real-estate attorney. Stewart I, 5 So.3d at 349. He continues to express a desire to associate with another attorney in a small real-estate practice. He says he would like to do “just a little” domestic work, such as adoptions and volunteering as a guardian ad litem. He has strong opinions about child-support enforcement and even mentions the possibility of working for the Mississippi Department of Human Services in the child-support division. Stewart also expresses a desire to enlist in the Mississippi National Guard. This particular desire raised the Bar’s suspicions.
¶ 41. The Bar insists that Stewart’s military aspirations are simply a ruse, and that he is not able to join the Guard because of his prior felony conviction. Stewart communicated his desire to enlist in the Guard in the letters he sent to various individuals soliciting their support for his reinstatement. Three of the individuals who submitted letters on Stewart’s behalf even expressed their admiration for Stewart’s desire to serve in the military. The Bar believes that Stewart misled these potential supporters in an effort to acquire their favor.
*19 ¶42. In his first deposition, Stewart, who is forty-six-years old, expressed his desire to join the Guard and said that the Guard could waive his age and his prior felony. He said that he had been in touch with Sergeant Donald Spikes, an officer in the Guard, and Donald Lott, a retired military officer with the Guard Recruiting Assistance Program. Lott told Stewart that it would be best for him to clear things with the Bar before trying to enlist. Stewart said that he also had spoken with Eric Kimbrough, an attorney and a unit commander in the Guard. Kimbrough told Stewart that it was his understanding that a local commander could make a waiver request. The record contains an email from Kimbrough to Stewart in which Kim-brough recalls an occasion that he requested, and was granted, a waiver for a soldier in his unit.
¶ 43. Following the first deposition, the Bar contacted the Guard and asked about the possibility of a felony waiver for someone with a professional degree. Lieutenant Commander Gregory S. Michel responded adamantly that the Guard does not allow waivers for felony convictions:
The assertion that the National Guard would allow an exception for a felony waiver to an individual possessing] a law degree is patently wrong. Whether the applicant holds a professional law degree or not, a felony conviction is not authorized nor is it waiverable [sic] under current enlistment criteria. And, finally, an individual with a felony conviction would never pass a security clearance investigation which is required for all officers.
Stewart received a copy of Michel’s letter prior to his second deposition.
¶ 44. At his second deposition, Stewart agreed that current enlistment criteria do not permit felony waivers. But Stewart insisted that enlistment standards fluctuate depending on circumstances. If recruitment is down, such as during wartime or when the economy is robust, standards are more lax so that more people are eligible. But if new recruits are pouring in, the Guard has the freedom to be more selective, and enlistment standards are more strict. Stewart referenced several news articles that spoke to fluctuating enlistment standards and the availability of waivers.[8] He said that he began looking at joining the Guard back in 2005. He initially contacted Bob Carson in United States Representative Gene Taylor’s office, and Carson directed him to a Colonel Jolly. According to Stewart, both Carson and Jolly had said that the best course was to try and get a waiver from the National Guard Bureau in Washington, D.C.
¶ 45. We cannot say that Stewart was deceitful in expressing a desire to join the Guard. While there is conflicting evidence about the felony-waiver issue, Stewart received information from several knowledgeable individuals, each of whom indicated that felony waivers are available. Additionally, his solicitation letter acknowledged that he had to overcome the waiver issue before being able to enlist: “I am still holding on to the desire to serve in the military once I can order my credentials to meet Guard standards (with the waivers).” Finally, and perhaps most importantly, Stewart filed a supplement to his current petition in which the three individuals who praised his military aspirations confirmed their support for Stewart regardless of whether or not he was able to join the Guard.
*20 G. Mental and emotional status
¶ 46. The Bar does not contend, and there is no evidence in the record-to suggest, that Stewart suffers from any mental or emotional problems.
IY. Requisite legal education for reinstatement
¶ 47. Stewart completed more than twenty-six hours of continuing legal education in 2009, including four hours of ethics. He also passed the Multi-State Professional Responsibility Exam with a scaled score of not less than 80. As a condition for reinstatement, Stewart would be required to take and pass the Mississippi Bar exam, as well. Stewart I, 5 So.3d at 350 n. 3 (citing Miss. R. Disc. 12.5).
CONCLUSION
¶ 48. Stewart has improved' upon his first petition for reinstatement in several ways. His current pétition lists additional civic, church, and charitable activities, and details the extent of his personal involvement in those activities. Contra Stewart I, 5 So.3d at 348. He introduces eighteen more letters supporting his reinstatement. By all accounts, he is respected and well-regarded by his peers.
¶ 49. Despite the factors weighing in his favor, Stewart’s second petition for reinstatement still falls short. Stewart answered falsely when the Bar asked if he had an expunged offense. And when forced to acknowledge the expungement, Stewart refused to disclose any information about the underlying offense. Because of these deficiencies, and considering the Bar’s continued opposition to his reinstatement, Stewart’s second petition for reinstatement is denied.
¶ 50. PETITION OF JOE GREGORY STEWART FOR REINSTATEMENT TO THE MISSISSIPPI BAR IS DENIED.
CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.

. Mississippi Board of Bar Admissions, http:// www.mssc.state.ms.us/ baradmissions/barad-missions_barapplication.html (last visited January 4, 2011).

. Id.

. Mississippi Board of Bar Admissions, http:// www.mssc.state.ms.us/baradmissions/bar admissions_forms.html (last visited January 4, 2011).

. While Stewart I cited fifty hours, the record here indicates that the actual number of hours was fifty-two.

. Stewart’s petition references the "Harrison County Republican Men,” but Stewart explained later that this was a typo.

. The authors of these letters were Robert Khayat, Guthrie Abbott, Shelton Hand, Norman Gillespie, Richelle Lumpkin, Keith Wise-man, John Cocke, William Hooper, Jr., Andre de Gruy, and Carl Ford. Stewart I, 5 So.3d at 349 n. 2.

. Steven Farese, Sr., Sherman Muths, III, Brad Walsh, William McDonough, Jr., William Weatherly, Alwyn Luckey, Robert Little, Jr., Cynthia Mitchell, Robert Crook, Mary Libby Payne, and Paul Newton all are members of the Bar. Robin S. Steward, William Fag-gert, George Church, Daniel Bomar, Nancy Ford, Jonathan Rawl, and Dr. B.H. Papasan are nonattorneys.

. Stewart acknowledged that he had not relied on these particular articles in submitting his petition for reinstatement. But he maintained that he had seen similar articles prior to filing his petition.