849 So.2d 884 (2003)
The MISSISSIPPI BAR
v.
Henrietta SWEENEY.
No. 2001-BA-01440-SCT.
Supreme Court of Mississippi.
January 16, 2003.
*885 Michael B. Martz, Christina Jacqueline Kelsey, Jackson, attorneys for appellant.
Hernrietta Sweeney, Pro se, attorney for appellee.
EN BANC.
PITTMAN, C.J., for the Court.
¶ 1. After a formal hearing, the Complaint Tribunal of the Court found attorney Henrietta Sweeney guilty of violating several rules of the Mississippi Rules of Professional Conduct and suspended her from the practice of law for one year. The Bar appeals and requests that the Court review the sanctions and determine if the punishment was too lenient in light of Sweeney's misconduct. We affirm the findings of the Tribunal and render a suspension for three years.

FACTS
¶ 2. James Allen Fairley (Fairley) died on November 27, 1995 leaving three surviving heirs-at-law: his brother, Adam Fairley, Jr. (Adam) and his two sisters, Nannie Mae Hall (Hall) and Annie Rankin (Rankin). On March 15, 1996, the Chancery Court of Covington County appointed Rankin as the Administratrix of Fairley's estate. On April 1, 1996, David Shoemake, the attorney for Adam and Hall, wrote to Henrietta Sweeney, the attorney for Rankin, requesting an inventory and an accounting of the estate property. Shoemake wrote twice with same requests, but Sweeney never responded. With the third and final request dated October 4, 1996, Shoemake expressed his clients' concerns that Rankin had taken personalty from Fairley's residence that belonged to Fairley's estate, taken possession of Fairley's automobile, and removed funds from Fairley's account at Covington County Bank. Also, he expressed their concerns regarding the location of the proceeds of Fairley's $100,000 life insurance policy and money held in another bank account at Union Planters Bank. On November 26, 1996, the Covington County Chancellor granted a petition, joined by all three heirs (Adam, Hall, and Rankin), authorizing *886 Rankin, as Administratrix, to sell certain real property of the estate.
¶ 3. On April 1, 1997, Shoemake, on behalf of his clients, filed a motion to compel Rankin to provide an inventory and an accounting. On May 9, 1997, the chancery court granted the motion and required Rankin to file a full and complete inventory and accounting before May 12, 1997. Without serving either the other two heirs or their attorney, on May 15 Rankin filed a Petition for Approval of First and Final Account of Executor and Closing of the Estate. This petition failed to render an accounting of receipts or disbursements from Fairley's estate, and indicated that since the inception of the estate Rankin had lost many of the assets belonging to the estate. The petition mentioned the two bank accounts and the insurance proceeds, but did not account for their whereabouts. Additionally, the petition indicated that Rankin sold Fairley's automobile without court approval or notice to other parties. On July 31, 1997, Rankin was removed as the Administratrix and ordered to provide an accounting by August 13.
¶ 4. Almost two years later, Adam and Hall filed a motion to cite Rankin for contempt of court because she failed to file an inventory or an accounting and for her negligence and misconduct in managing the estate. The chancery court entered a judgment on August 27, 1999. Relevant to Sweeney, the court found that in November or December of 1996 Sweeney endorsed and deposited into her trust account a check payable to Fairley's Estate that she received as proceeds from the sale of estate property. Likewise, the court noted that Sweeney only produced the proceeds from this check two days prior to the hearing. The court found that proceeds from the sale of Fairley's automobile and other personal property (approximately $2,000) were paid to either Sweeney or Rankin and that these two women mishandled assets of the estate and failed or refused to turn over assets of the estate to the present Administratrix. Following this judgment, the Mississippi Bar began an investigation.
¶ 5. The Bar determined that Sweeney, as counsel for Rankin, had in her possession a check dated November 7, 1996, in the amount of $6,600.65 resulting from the sale of estate property and payable to the "Estate of James Fairley." She deposited this check into her trust account at Citizens State Bank in Magee, Mississippi, on December 19, 1996. Between December 19, 1996, and August 20, 1999, the balance of Sweeney's trust account frequently fell below $6,600.65.
¶ 6. The Complaint Tribunal held that Sweeney misappropriated her client's property for her own use and benefit; that she should have been aware that the funds she received were not to be deposited in her trust account but instead into a separate account; and that she allowed assets of the estate to be sold without court approval.
¶ 7. The Complaint Tribunal's decision followed a formal investigation and a hearing on Sweeney's conduct. At no time throughout the proceedings or this appeal did Sweeney appear or respond to the allegations. The transcript from the hearing reflects that counsel for the Bar, Christina Jacqueline Kelsey, spoke with Sweeney the day before the hearing and that Sweeney stated she was having on going personal problems related to her children and that she was under the care of a psychiatrist. Sweeney said she planned to close her practice and considered relocating to North Carolina. Further, she acknowledged that she was in default and expressed her hope that the Tribunal would be lenient.
*887 ¶ 8. The Tribunal entered a default judgment finding that, by clear and convincing evidence, Sweeney engaged in conduct involving dishonesty, fraud, deceit, misrepresentation and violated certain Rules of Professional Conduct, including:
Rule 1.1, MRPC, which provides that a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
Rule 1.3, MRPC, which provides that a lawyer shall act with reasonable diligence and promptness in representing a client.
Rule 1.4, MRPC, which provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information and shall further explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
Rule 1.15, MRPC, which provides the conditions for a lawyer holding property belonging to a client.
Rule 8.4 (a, c, and d), MRPC, which provides that it is professional misconduct to violate or attempt to violate the rules of the professional conduct, to engage in conduct involving dishonesty, fraud, deceit and misrepresentation or to engage in conduct that is prejudicial to the administration of justice.

STANDARD OF REVIEW
¶ 9. This Court has exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys. Rules of Discipline for Miss. State Bar 1(a). Appeals from judgments rendered by the complaint tribunal are provided for in Miss.Code Ann. § 73-3-329 (1999). On appeal, this Court, "shall review the entire record and the findings and conclusions of the Tribunal, and shall render such orders as the Court may find appropriate." Foote v. Miss. State Bar Ass'n, 517 So.2d 561, 564 (Miss.1987). We review the evidence under the de novo standard, on a case-by-case basis, sitting as the trier of fact, and no substantial evidence or manifest error rule shields the Tribunal from scrutiny. Foote, 517 So.2d at 564 (citing Hoffman v. Miss. State Bar Ass'n, 508 So.2d 1120, 1124 (Miss.1987); Vining v. Miss. State Bar Ass'n, 508 So.2d 1047, 1049 (Miss. 1987)). However, the Court may give deference to the findings of the Tribunal. Parrish v. Miss. Bar, 691 So.2d 904, 906 (Miss.1996), (citing Miss. State Bar v. Odom, 566 So.2d 712, 714 (Miss.1990)).

DISCUSSION
¶ 10. The only issue before this Court: Is whether the one year suspension imposed on Sweeney was sufficient under the facts and applicable law?
¶ 11. The primary concern when imposing sanctions for attorney misconduct is that the punishment be sufficient "to vindicate in the eyes of the public the overall reputation of the Bar." Parrish, 691 So.2d at 907 (citations omitted). The Court uses two sets of criteria when reviewing the sanctions for misconduct. Miss. Bar v. Alexander, 669 So.2d 40, 42 (Miss.1996). However, the Court is essentially "free to evaluate the discipline imposed on an attorney and on review modify punishment as needed to best serve the interest of the Bar and public." Parrish, 691 So.2d at 907 (citing Miss. State Bar v. Blackmon, 600 So.2d 166, 173 (Miss.1992)).
¶ 12. The first set of criteria employed by this Court include:

*888 (1) the nature of the conduct involved;
(2) the need to deter similar misconduct;
(3) the preservation of the dignity and reputation of the profession;
(4) the protection of the public; and
(5) the sanctions imposed in similar cases.
Parrish, 691 So.2d at 907; Alexander, 669 So.2d at 42; Miss. Bar v. Attorney ST, 621 So.2d 229, 233 (Miss.1993). The second set of criteria we consider originates from the ABA standards for imposing sanctions. These include:
(a) the duty violated;
(b) the lawyer's mental state;
(c) the actual or potential injury caused by the lawyer's misconduct; and
(d) the existence of aggravating or mitigating circumstances.
Parrish, 691 So.2d at 907; Blackmon, 600 So.2d at 173.
¶ 13. Because Sweeney failed to respond to the allegations, the factual findings of the judgment are based solely on the Bar's complaint. An exhaustive analysis applying the eight factors to Sweeney's actions is not needed. Because the allegations are uncontroverted, Sweeney's misconduct clearly warrants a significant sanction.
¶ 14. It is undisputed that Sweeney misappropriated funds belonging to the estate. Unquestionably, mishandling of estate funds is the type of professional misconduct that the Court and the Bar must deter. Such misconduct reveals a want of personal honesty and integrity and reflects negatively upon an attorney's fitness to practice law.
¶ 15. Following a court order, Sweeney made the proper disbursements. Thus, economically speaking, little injury resulted from Sweeney's conduct. However, there will be significant injury to the dignity and reputation to the profession if attorneys are not substantially punished for converting client funds. The Court has held that a lawyer should not be rewarded for finally doing what he is already obliged to do. Foote, 517 So.2d at 565 (citing Clark v. Miss. State Bar Ass'n, 471 So.2d 352, 357 (Miss.1985)). "The restitution by an attorney of funds previously misappropriated does not mitigate the offense, particularly where the restitution has been made under pressure." Clark, 471 So.2d at 357.
¶ 16. The Bar suggests that the proper penalty for Sweeney's conduct is either disbarment or, at a minimum, a three-year suspension. Our review of precedent indicates that the punishment varies in relation to the circumstances. In Haimes v. Miss. Bar, 601 So.2d 851 (Miss.1992), we held that an attorney's commingling of funds belonging to the guardianship of a minor warranted disbarment. Haimes, 601 So.2d at 855. This Court stated that "there may be worse sins, but the ultimate wrong of a lawyer to his profession is to divert clients' and third parties' funds entrusted to him to an unauthorized use." Id. (citations omitted). A lawyer guilty of such conduct exhibits a character trait totally at odds with the purposes, ideals and objectives of our profession. Id.
¶ 17. In Miss. State Bar Ass'n v. Strickland, 492 So.2d 567 (Miss.1986), this Court held that the conversion of estate funds merited a three-year suspension, not withstanding the attorney's personal problems including addiction to alcohol. We stated that Strickland's taking of money belonging to an estate he represented and converting the money for his own use involved moral turpitude. Id. at 573. After closely analyzing Strickland, we conclude that Sweeney's punishment should not exceed that imposed on Strickland.
*889 ¶ 18. Strickland's actively sought to defraud the judiciary with forged documents and continued to practice law despite a suspension. Strickland eventually abandoned efforts to mislead the judiciary while defending himself, and focused on presenting evidence of "insidious alcoholism." Conversely, Sweeney never sought to mislead the Tribunal or the investigation. Actually, Sweeney failed to do anything.
¶ 19. The public and members of the bar must understand the seriousness of proceedings before the Complaint Tribunal. Sweeney's conduct and decision not to respond, or even appear, before the tribunal ought to be significantly punished. Her failure to respond to the allegations or appear before the tribunal are almost as serious as her misconduct. However, Sweeney's telephone conversation with Kelsey and her failure to provide a defense leads the Court to believe that Sweeney may indeed have serious personal problems. The failure to defend one's self is indicative of a person with serious personal problems (i.e. depression). The failure to defend herself may be more persuasive testimony regarding personal problems than any medical affidavits she could have provided. Nevertheless, the presence of personal problems does not excuse Sweeney's misconduct or her failure to respond to the Tribunal.

CONCLUSION
¶ 20. Based on the record, the Court finds Sweeney's misconduct deserving of a greater punishment than the one-year suspension imposed by the Complaint Tribunal. Because the facts are uncontroverted, we hereby affirm the tribunals' findings of fact, reverse the one-year suspension, and suspend Henrietta Sweeney from practicing law in the State of Mississippi for three years.
¶ 21. HENRIETTA SWEENEY IS SUSPENDED FROM PRACTICING LAW IN THE STATE OF MISSISSIPPI FOR THREE YEARS.
SMITH, P.J., WALLER, DIAZ AND CARLSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. McRAE, P.J., NOT PARTICIPATING.
COBB, J., concurring in part and dissenting in part:
¶ 22. I concur with the majority's conclusion that attorney Henrietta Sweeney was guilty of serious professional misconduct, but I disagree with the majority's conclusion that a three-year suspension is an appropriate disciplinary sanction. This Court should lend its maximum support to the Mississippi Bar's efforts to strictly enforce the highest ethical standards for the legal community. Sweeney held estate proceeds for over two years without making any effort to disburse them to their rightful owner. Her bank account balance indicates that this money ostensibly held in trust was improperly used by Sweeney. The Complaint Tribunal found that she had misappropriated for her own use the property of her client and that she had allowed estate assets to be sold without court approval. Moreover, Sweeney did not even appear before the tribunal, citing family-related "personal problems," so that a default judgment was entered against her.
¶ 23. This Court has stated:
There can be no legal profession in the absence of scrupulous honesty by attorneys with other people's money. Public *890 confidence here is vital. There may be worse sins, but the ultimate wrong of a lawyer to his profession is to divert clients' and third parties' funds entrusted to him to an unauthorized use. A lawyer guilty of such conduct exhibits a character trait totally at odds with the purposes, ideals and objectives of our profession.
Reid v. Miss. State Bar, 586 So.2d 786, 788 (Miss.1991). The majority acknowledges that Sweeney has behaved "totally at odds with the purposes, ideals and objectives of our profession," but then belies its words by finding her conduct to warrant only a three-year suspension. In my view, the "ultimate wrong," professionally speaking, should carry the ultimate professional penalty, disbarment. The majority finds Sweeney's non-appearance before the tribunal "almost as serious as her misconduct" and says that her failure to appear "ought to be significantly punished." But then it assigns the same punishment as we have meted out to attorneys guilty of commingling, without additional fault. Its main authority is Mississippi State Bar Ass'n v. Strickland, 492 So.2d 567 (Miss. 1986), in which this Court suspended for three years an attorney whose conduct had been arguably more reprehensible than Sweeney's.
¶ 24. However, past penalties are only one element for this Court to consider:
This Court has considered five (5) factors in determining the severity of the sanction when an attorney is subject to discipline:
(A) Nature of the misconduct involved;
(B) Need to deter similar misconduct;
(C) Preservation of dignity and reputation of the legal profession;
(D) Protection of the public; and
(E) Sanctions imposed in similar cases.
Stegall v. Miss. Bar, 618 So.2d 1291, 1294 (Miss.1993) (quoting Culpepper v. Miss. State Bar, 588 So.2d 413, 420 (Miss.1991)). What may have been well-intentioned leniency in the past ought not prevent this Court's present-day efforts to promote the highest professional standards. The reputation of our state's attorneys in the eyes of the public is the principal consideration in determining what sanctions are proper, Miss. Bar v. Walls, 797 So.2d 217, 219 (Miss.2001) (quoting Hall v. Miss. Bar, 631 So.2d 120, 125 (Miss.1993)). I do not think anything would alarm the public more about its own dealings with attorneys than the fear that client money is not being handled with the utmost propriety, or that the rare attorneys who mishandle client money are not being punished with the utmost severity.
¶ 25. Notwithstanding our compassion for Sweeney's personal problems, whatever they may be, we should not lose sight of the fact that Sweeney's conductperhaps because of those problems, perhaps not[1] has put her far beyond the bounds of what the Mississippi legal community expects of its members. I therefore would disbar Sweeney.
NOTES
[1] I am troubled by the majority's statement that her "failure to defend herself may be more persuasive testimony regarding personal problems than any medical affidavits she could have provided." Maj. op. at 8. This could encourage malfeasant attorneys to absent themselves from disciplinary proceedings and to plead nonspecific personal problems in the calculated hope of obtaining mercy from a well-meaning tribunal.