WALLER, .Chief'Justice,
for the Court:
¶ 1. After finding that attorney Brian Ogletree had violated Rule 1.15(a) and Rule 8.4(a) and (d) of the Mississippi Rules of Professional Conduct, a Complaint Tribunal suspended Ogletree from the practice of law for six months. The Mississippi Bar appeals from this ruling, arguing that a harsher penalty should be imposed. Finding the Complaint Tribunal’s disciplinary action to be sufficient, we affirm Ogle-tree’s six-month suspension.

FACTS & PROCEDURAL HISTORY

¶ 2. Robert Ogletree was admitted to the Mississippi Bar in 1996, and he was an active member in good standing prior to the instant matter. He has not had any previous disciplinary actions.
¶3. The parties submitted a stipulation of facts to the Complaint Tribunal, so the following facts are not in dispute. In January 2011, John Buckley hired Ogletree to represent him in a child-support modification matter. Ogletree requested a $1,000 retainer, from which he would charge $250 per hour. Buckley gave Ogletree a check for $400 as partial payment of the retainer. While Ogletree maintained three trust accounts at the time, he did not deposit Buckley’s $400 check into any of them. Rather, the check was deposited into Ogle-tree’s general operating account. Ogletree subsequently terminated his representation of Buckley. Ogletree wrote Buckley a check for $400 from one of his trust accounts to refund Buckley’s partial payment *81 of the retainer. The check was returned for insufficient funds. Ogletree then delivered $440 in cash tó Buckley. -
¶ 4. Buckley’s new wife then submitted an informal complaint to the Mississippi Bar, claiming that Ogletree had violated the Mississippi Rules of Professional Conduct in the representation of her husband. The Mississippi Bar’s Committee on Professional Responsibility reviewed the matter and requested additional information from Ogletree—specifically, all records pertaining to any lawyer trust accounts Ogletree had' maintained in the previous three years. Ogletree submitted bank statements from three trust accounts, but he did not have ledgers, records of deposits, or records of'the amounts owed to specific clients. Ogletree’s bank records revealed a pattern of misconduct regarding his trust accounts. After an investigatory hearing, the Committee recommended that the Bar file a Formal Complaint against Ogletree.
¶ 5. The Formal Complaint alleged that Ogletree had failed to safekeep client funds, that he had commingled personal and business funds with client and third-party funds, that he had written checks for personal and business expenses from his trust accounts, and that his trust accounts were overdrawn several times and several checks were returned for insufficient funds. The Formal Complaint asserted that Ogletree had violated Rule 1.15(a) and Rule 8.4(a) and (d) of the Mississippi Rules of Professional Conduct. In response to the Formal Complaint, Ogletree admitted that he had paid personal expenses out of his trust accounts, that the trust accounts •had been overdrawn, and that checks had been returned for insufficient funds. However, he claimed that the errors were inadvertent mistakes and the result of miscalculations; he denied commingling or intentional misappropriation of client funds.
¶ 6. In response to the Bar’s request for production of documents, Ogletree produced various bank statements, deposit slips, and check stubs for his three trust accounts for the years 2005 through 2011. Between 2009 and 2011, Ogletree’s trust accounts were overdrawn and/or cheeks were returned for insufficient funds on fourteen occasions. During the same period; Ogletree paid business or personal expenses out of the trust accounts five times, including payments to Dish Network, AT & T, Honda, Wells Fargo Mortgage, and Ogletree’s landlord.
¶ 7. The Complaint Tribunal held a hearing; and Ogletree testified on his own behalf. ■ Ogletree testified that, in 2002, his wife learned that she had a -brain tumor and underwent surgery. A'year and a half later, his wife began having grand mal seizures, and she had to be induced into a coma to stop the seizures. She is now on medication to keep the seizures under control. Since his wife became ill, Ogletree has had trouble sleeping and has suffered from depression and anxiety—conditions for which he takes medication.
¶ 8. Regarding the trust accounts, Ogle-tree testified that he looked at the accounts online every morning and if “something was wrong” he would “try to fix it or move the money to where it was supposed to be.” He admitted that Mississippi Valley Title Company had advised him previously that his record keeping was insufficient. He said he did not intentionally pay his bills out of the trust accounts. He explained that he carried a Voided check from each account in his wallet, so he would have the routing and account numbers and could .pay bills from the road. He admitted that the trust account checks each had “Ogletree Law Firm Trust Account” printed on them and that he should have seen that the check was from a trust account when he was giving the account *82 number over the phone. Ogletree noted that some of the money in his trust accounts represented fees he had earned and simply had failed to transfer to his operating account. Nevertheless, he recognized that he should have paid his business and personal expenses out of his operating account. He testified that he had just made a .mistake and that he should have paid more attention. Ogletree claimed that none of his clients had lost money in spite of his errors.
' ¶ 9. The Complaint Tribunal held that Ogletree had violated Rules 1.15(a) and 8.4(a) and (d) of the Mississippi Rules of Professional Conduct, The Tribunal suspended Ogletree from the practice of law for six months and referred him to the Lawyers and Judges Assistance Program. The Bar filed a motion to reconsider, which was denied. The Bar then appealed to this Court, arguing that Ogletree should have been disbarred or suspended for a minimum of three years. Ogletree initially did not file a brief, and the Court issued a Show Cause Order requiring him to respond to the Bar’s brief. Ogletree responded that his failure to file a brief was not done out of willful disregard; rather, he simply surrendered to the will of the Court. He explained that his financial, physical, and mental resources had been depleted, and his attorney had withdrawn because Ogletree could not pay him. Ogletree wrote that he did not have the resources to fight the Bar, and he believed that the Court would uphold the Complaint Tribunal’s ruling.

STANDARD OF REVIEW

¶ 10. The Supreme Court has exclusive jurisdiction over attorney discipline matters, which we review de novo. Miss. Bar v. Shelton, 855 So.2d 444, 445 (Miss.2003). See also Miss. R. Disc. 1(a). While “no substantial evidence or manifest error rule shields the [Complaint] Tribunal from scrutiny,” this Court may grant deference to the findings of the Tribunal “due to its exclusive opportunity to observe the demeanor and attitude of the witnesses, including the attorney, which is vital in weighing evidence.” Foote v. Miss. Bar Ass’n 517 So.2d 561, 564 (Miss.1987); Parrish v. Miss. Bar, 691 So.2d 904, 906 (Miss.1996). “The burden is usually on the Mississippi Bar to show by clear and convincing evidence that an attorney’s actions constitute professional misconduct.” Shelton, 855 So.2d at 445 (quoting Miss. Bar v. Pels, 708 So.2d 1372, 1374 (Miss.1998)).

DISCUSSION

¶ 11. The Complaint Tribunal suspended Ogletree from the practice of law for six months after finding that he had violated Rules 1.15(a) and 8.4(a) and (d) of the Mississippi Rules of Professional Conduct. Rule 1.15 requires lawyers to maintain separate accounts and complete records for the property of clients and third parties:
A lawyer shall hold clients’ and third persons’ property separate from the lawyer’s own property. Funds shall be kept in a separate trust account maintained in the state where the lawyer’s office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such trust account funds and other property shall be kept and preserved by the lawyer for a period of seven years after termination of the representation.
Miss. R. Profl Cond. 1.15(a). Rule 8.4 defines attorney misconduct, in pertinent part, as follows: “It is professional misconduct for a lawyer to: (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do *83 so, or do so through the acts of another; ... (d) engage in conduct that is prejudicial to the administration of justice.” Miss. R. Profl Cond. 8.4(a), (d). The Complaint Tribunal found that Ogletree had violated the rules by commingling client funds with his own, failing to keep safe client property, misusing client funds, and failing to keep adequate records. Ogletree does not dispute the Complaint Tribunal’s findings. The only issue is whether the Complaint Tribunal imposed sufficient punishment.
¶ 12. The Bar asserts that the seriousness of Ogletree’s violations warrants a harsher punishment. Based on the Court’s prior holdings, the Bar argues that disbarment or, at a minimum, a three-year suspension is the appropriate sanction for an attorney who misappropriates client funds and commingles client funds with his own. The Bar is correct that disbarment or a three-year suspension are the most common punishments for commingling client funds. However, “the Court must decide each disciplinary ease on its own unique merits.” Pels, 708 So.2d at 1374 (quoting Fougerousse v. Miss. State Bar Ass'n 563 So.2d 1363, 1366 (Miss.1990)). The Court considers nine factors to determine the appropriate sanction:
(1) The nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of dignity and reputation of the legal profession; (4) the protection of the public; (5) sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer’s mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating or mitigating factors.
McIntyre v. Miss. Bar, 38 So.3d 617, 625 (Miss.2010) (quoting Liebling v. Miss. Bar, 929 So.2d 911, 918 (Miss.2006)). We have consolidated and reorganized the Liebling factors for the purpose of discussion.
The nature of the misconduct involved and the duty violated
¶ 13. The Complaint Tribunal found that the nature of Ogletree’s misconduct and the duty violated involved Ogle-tree’s “ethical duty of loyalty to clients.” Specifically, Ogletree’s misconduct included failing to keep safe client funds, commingling client funds with personal funds, paying personal and business expenses out of his trust accounts, and failing to keep adequate records of trust accounts. This Court has held that commingling client funds is the “cardinal sin of the legal profession.” Miss. Bar v. Coleman, 849 So.2d 867, 874 (Miss.2002). The Coleman Court recognized that commingling had been grounds for disbarment in many cases and found that it is “the ultimate breach of fiduciary trust.” Id. “There can be no more damaging evidence ... as to a lawyer’s fitness to practice law than mishandling a trust account.” Reid v. Miss. Bar, 586 So.2d 786, 788 (Miss.1991).
The need to deter similar misconduct, protect the public, and preserve the dignity and reputation of the legal profession
¶ 14. This Court has held that “[t]he purpose of discipline is not simply to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar misconduct.” McIntyre, 38 So.3d at 625 (quoting Miss. State Bar Ass’n v. A Miss. Attorney, 489 So.2d 1081, 1084 (Miss.1986)). “Consistent patterns of commingling and misappropriation ... generally are deserving of harsh sanctions, which serve to protect the public from greater harm.” McIntyre, 38 So.3d at 625-26. The Court has said that preserving the dignity of the bar is one of the *84 most important factors. “Worthy of most consideration when contemplating sanctions is vindicating ‘in the eyes of the public the overall reputation of the bar.’ ” Miss. Bar v. Walls, 797 So.2d 217, 219 (Miss.2001) (quoting Hall v. Miss. Bar, 631 So.2d 120, 125 (Miss.1993)). As quoted above, commingling and misappropriation damage the “dignity and reputation of the legal profession.” McIntyre, 38 So.3d at 625.
The actual or potential injury resulting from the misconduct
¶ 15. Ogletree testified that none of his clients had lost money due to his conduct. When the check to Buckley bounced, Ogle-tree paid Buckley in cash and gave him an additional $40 to cover any bank charges. However, this Court has held that restitution of funds does not mitigate the offense. Cotton v. Miss. Bar, 809 So.2d 582, 587, 589 (Miss.2000). In McIntyre, although the attorney replaced the funds after a short time and none of his clients actually lost money, this Court held that a client’s loss of use of the funds for even a short time gives “rise to an actual injury,” and “the potential for the clients’ total loss of use of the funds- made the potential injury great.” McIntyre, 38 So.3d at 627. Thus, although Ogletree’s clients did not lose money, actual injury still occurred, and the potential for injury certainly existed, as Ogletree’s accounts frequently were overdrawn.
The lawyer’s mental state
T16. The Complaint Tribunal held that “Ogletree did not have to intend to steal from his clients and/or third parties for his conduct to warrant discipline.” The Tribunal found that Ogletree was aware that he had mixed personal and client funds,-that his account records did not identify the ownership of the funds in his trust accounts, that each time he paid personal or business funds out of his trust account, he risked misappropriating client funds, and that overdrawing his accounts left balances below the amount with which he was entrusted. The Bar argues that, because Ogletree was aware of the consequences of commingling and failing to keep adequate records, he knowingly converted client funds.
¶ 17. Another element of Ogletree’s mental state is. depression., He testified that his wife had been ill, resulting in his own depression, anxiety, and loss of sleep. Ogletree’s response to the Court’s Show Cause Order is further evidence of Ogle-tree’s deteriorated mental state, as he wrote that his “mental and physical resources” had been depleted and that he surrendered to the will of the Court. However, we note that Ogletree testified that his wife was ill from 2002 to 2007,- and Ogletree’s misconduct occurred between 2009 and 2011. Some of the bank statements Ogletree produced' dated back to 2005, and, while it seems that he has never maintained adequate records, there is no indication that he overdrew his accounts or paid personal expenses out of his trust accounts before 2009.
The existence of aggravating or mitigating factors
¶ 18. Ogletree’s mental status and life circumstances are mitigating factors. Other mitigating factors include that Ogletree has not had any'prior disciplinary violations, he has cooperated with the Bar, and he did not lie to disciplinary authorities. An aggravating factor is that Mississippi Valley Title had warned Ogletree that his record keeping was inadequate, yet he failed to remedy the problem. Further, while this case arises from a single complaint, the evidence presented to the Complaint Tribunal indicated that his misconduct went on for at least three years.
*85 Sanctions imposed in similar cases
¶ 19. “There is no consistent pattern in the sanctions imposed” in commingling cases; this Court’s determination of the appropriate disciplinary action has depended on the circumstances of each ease. McIntyre, 38 So.3d at 625-26. Egregious conduct involving “dishonesty, misrepresentation to his client, lying to the disciplinary authorities, or systematic diversion of his client’s funds for personal purposes” is usually present where the Court has disbarred an attorney for misappropriating client funds. Pels, 708 So.2d at 1375. See McIntyre, 38 So.3d at 626 (attorney disbarred for commingling and misappropriating client funds over a four-year period, where attorney previously had been disciplined by the Bar for similar misconduct); Haimes v. Miss. Bar, 601 So.2d 851, 855 (Miss.1992) (attorney disbarred for withdrawing funds from a guardianship account without court approval and converting the funds to his personal use, where the attorney previously had been disciplined by the Bar for similar misconduct); Clark v. Miss. Bar Ass’n, 471 So.2d 352 (Miss.1985) (attorney disbarred for misappropriating conservatorship funds and misrepresenting his-actions to his client and the'trial court).
¶20. We do not find that Ogletree’s misconduct rises to a level of egregiousness sufficient to warrant disbarment. In the disbarment cases, the attorneys’ conduct was intentional, "the attorneys were dishonest with clients, clients actually lost money, and/or the attorneys had been disciplined previously for the same type of conduct—factors not present in Ogletree’s case. Ogletree’s conduct was certainly careless and possibly negligent, but he did not seem to have an intent to steal. Ogle-tree has no prior disciplinary history, nor did he lie to his clients or to disciplinary authorities. Thus, we must determine whether the Complaint Tribunal’s recommendation of a six-month suspension is a sufficient sanction, or whether harsher action must be taken.
¶ 21. The Bar contends that, where disbarment is not warranted, a three-year suspension is the most appropriate sanction in commingling cases. For example, in both Miss. Bar v. Sweeney, 849 So.2d 884 (Miss.2003), and Miss. Bar v. Odom, 566 So.2d 712 (Miss.1990), the attorneys received three-year suspensions for misappropriating funds in the larger context of mishandling their clients’ estate cases. In Sweeney, the attorney failed to respond to requests for an inventory and accounting of the estate, converted estate funds to personal use over a-three-year period, and allowed estate assets to be sold without court approval. Sweeney, 849 So.2d at 885-86. The Complaint Tribunal entered a default judgment against her after she wholly failed to appear or respond to the Bar’s allegations. Id. at 887. In Odom, the attorney failed to open a separate bank account for the estate, deposited estate proceeds into a bank account he used for his personal and business expenses, overdrew that account, failed to close the estate in a timely manner, “gouged his clients” with an unreasonable fee, and asked his clients, under false pretenses, to “hold” their checks, knowing that he did not have enough money in his account to honor them. Id. at 713-14. Due to the extent of Odom’s failures, his clients found it necessary to hire another attorney to straighten out- their estate. Id. at 716.
¶ 22. The attorney in Mississippi Bar v. Coleman, 849 So.2d 867 (Miss.2002), also received a three-year suspension for converting client funds to his personal use. The attorney in Coleman endorsed a $14,900 check to his client, and deposited it into his personal bank account. Id. at 869-70. Thereafter,, the attorney and his *86 wife wrote seventy-two checks from the account before he finally delivered the funds to his client five weeks later. Id. at 870. This Court found, contrary to the Complaint Tribunal’s assessment, that Coleman’s conduct demonstrated an intent to misappropriate or convert client funds for his own use, and only returned the money upon inquiry. Id. at 875.
¶23. In some cases, this Court has been more lenient with attorneys who commingled or misappropriated client funds. Several of these cases have involved the imposition of reciprocal discipline. See Miss. Bar v. Gardner, 730 So.2d 546 (Miss. 1998) (one-year suspension for misappropriating client funds in Louisiana); Miss. Bar v. Pels, 708 So.2d 1372 (Miss.1998) (thirty-day suspension for commingling client funds in Washington D.C.). Additionally, lesser sanctions often are imposed when the attorney’s misconduct was the result of carelessness or negligence, rather than ill intent. For example, in Catledge v. Mississippi Bar, 913 So.2d 179 (Miss.2005), the attorney deposited client settlement funds into his payroll account rather than a trust account. Catledge was not using his trust account at the time due to alleged problems with his bank, and he admitted that his bookkeeper did not know he was using his payroll account as a temporary trust account. Id. at 181. Cat-ledge’s payroll account then fell below the amount needed to pay his client on several occasions. Id. Catledge eventually was able to repay his client, but she filed a complaint against him concerning his mishandling of the settlement funds. Id. at 182. The Complaint Tribunal concluded that Catledge should be suspended for one year, and both Catledge and the Bar appealed. Id. This Court recognized that Catledge had taken steps to safeguard against future problems with his accounts. Id. at 185. On the other hand, this Court noted that Catledge had “the third worst record in the history of the Mississippi Bar,” with twelve prior adjudications of misconduct. Id. at 186. Ultimately, this Court found that “Catledge’s conduct was not intentional, but was the result of negligence and lack of attention to his law firm’s business and his client.” Id. at 190. Looking at the totality of the circumstances, this Court held that a ninety-day suspension was a sufficient sanction. Id. at 192.
Appropriate discipline
¶ 24. This case presents this Court with a level of misconduct somewhere between that of Catledge and Coleman. The Complaint Tribunal found Ogletree’s conduct to be more analogous to Catledge, although more extensive in scope. We agree. As in Catledge, Ogletree’s act of depositing a retainer check into his operating account, rather than his trust account, is a per se violation of Rule 1.15(a) and Rule 8.4. But, additionally, the evidence presented here reveals that Ogletree commingled his own funds with client funds in his trust account for a prolonged period of time. He testified that he never intentionally paid his own expenses out of his trust account, but he admitted to mistakenly mixing up his bank account numbers from time to time when paying bills on the road. He also admitted that he sometimes kept money he had earned in his trust account, rather than transferring it to his operating account. These acts, while more concerning than those in Catledge, appear to be largely the result of negligence and inattentiveness and do not rise to the level of ill intent detailed in Sweeney, Coleman, or Odom. In contrast to the instant case, the clients in Odom and Sweeney had to resort to litigation to recover the funds their attorneys had misappropriated.
¶25. Additionally, unlike the attorney in Coleman, Ogletree’s mental state and *87 life circumstances were recognized by both the Bar and the Complaint Tribunal as mitigating factors that at least implicitly caused Ogletree’s lapses in judgment. And unlike many of the cases in which this Court has found a three-year suspension to be warranted, Ogletree has not had any prior disciplinary violations. Ogletree’s conduct was certainly careless and possibly negligent, but a complete view of the record indicates that he did not have an intent to steal. Ogletree did not lie to his clients or to disciplinary authorities. He has had life situations that presented challenges, apparently resulting in inattention to his work.
¶26. After considering the totality of the circumstances, including any mitigating and aggravating circumstances presented to the Complaint Tribunal, we hold that a six-month suspension is an appropriate sanction to punish Ogletree for his misconduct. Ogletree also must comply with all provisions of the Complaint Tribunal’s judgment before applying for reinstatement. These additional requirements satisfy this Court’s concern that the public be protected from similar violations in the future.

CONCLUSION

¶ 27. For the foregoing reasons, we affirm the Complaint Tribunal’s judgment suspending Robert Bryan Ogletree from the practice of law for six months.
¶ 28. ROBERT BRYAN OGLETREE SHALL BE SUSPENDED FROM THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI FOR A PERIOD OF SIX (6) MONTHS AND MUST COMPLY WITH ALL PROVISIONS OF THE COMPLAINT TRIBUNAL’S JUDGMENT PRIOR TO REINSTATEMENT.
DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR. COLEMAN, J, DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J.