WALLER, CHIEF JUSTICE, FOR THE COURT:
¶ 1. This is Robert Bryan Ogletree's first petition for reinstatement to the practice of law following his six-month suspension in 2015. Ogletree has met the jurisdictional requirements for reinstatement and has met his burden of proving that he has rehabilitated his conduct and moral character. Accordingly, this Court grants Ogletree's petition for reinstatement.
*104 FACTS & PROCEDURAL HISTORY
¶ 2. The facts leading to Ogletree's suspension are set out in this Court's opinion in Mississippi Bar v. Ogletree , 226 So.3d 79, 80-81 (Miss. 2015) :
In January 2011, John Buckley hired Ogletree to represent him in a child-support modification matter. Ogletree requested a $1,000 retainer, from which he would charge $250 per hour. Buckley gave Ogletree a check for $400 as partial payment of the retainer. While Ogletree maintained three trust accounts at the time, he did not deposit Buckley's $400 check into any of them. Rather, the check was deposited into Ogletree's general operating account. Ogletree subsequently terminated his representation of Buckley. Ogletree wrote Buckley a check for $400 from one of his trust accounts to refund Buckley's partial payment of the retainer. The check was returned for insufficient funds. Ogletree then delivered $440 in cash to Buckley.
....
The Formal Complaint alleged that Ogletree had failed to safekeep client funds, that he had commingled personal and business funds with client and third-party funds, that he had written checks for personal and business expenses from his trust accounts, and that his trust accounts were overdrawn several times and several checks were returned for insufficient funds. The formal complaint asserted that Ogletree had violated Rule 1.15(a) and Rule 8.4(a) and (d) of the Mississippi Rules of Professional Conduct. In response to the Formal Complaint, Ogletree admitted that he had paid personal expenses out of his own trust accounts, that the trust accounts had been overdrawn, and that checks had been returned for insufficient funds. However, he claimed that the errors were inadvertent mistakes and the result of miscalculations; he denied commingling or intentional misappropriation of client funds.[1]
At the hearing before the Complaint Tribunal, Ogletree testified that, in 2002, his wife learned that she had a brain tumor and underwent major surgery. Id. Ogletree testified that, as a result of his wife's illness, he suffered from depression, anxiety, and insomnia-conditions for which he took medications. Id. Due to his mental state at the time, Ogletree admitted that he failed to adequately monitor his accounts. Id. at 82. Ogletree fully acknowledged that he made a mistake and that he should have paid his business and personal expenses out of his operating account. Id.
¶ 3. Ultimately, the Complaint Tribunal held that Ogletree had violated Rules 1.15(a) and 8.4(a) and (d) of the Mississippi Rules of Professional Conduct. Id. Consequently, Ogletree was suspended from the practice of law for six months and was referred to the Lawyers and Judges Assistance Program. Id. On the Bar's appeal from the Tribunal's decision, this Court affirmed, finding that, given the totality of the circumstances, the six-month suspension was appropriate to punish Ogletree for his misconduct. Id. at 87. Justice Coleman, joined by Presiding Justice Randolph, dissented and would have imposed a three-year suspension. Id. at 87-89 (Coleman, J., dissenting).
STANDARD OF REVIEW
¶ 4. This Court has exclusive jurisdiction over attorney-reinstatement *105 cases. In re Morrison , 819 So.2d 1181, 1183 (Miss. 2001). This Court conducts a de novo review of the evidence in such cases, acting as the trier of fact on a case-by-case basis. Id. The petitioner "carries the burden of proving that he has rehabilitated himself and has established the requisite moral character to entitle him to the privilege of practicing law." Stewart v. Miss. Bar , 5 So.3d 344, 346-47 (Miss. 2008) (citing In re Holleman , 826 So.2d 1243, 1246 (Miss. 2002) ). The petitioner must exhibit "[a] firm resolve to live a correct life evidenced by outward manifestations sufficient to convince a reasonable mind clearly that the person has reformed ...." Phillips v. Miss. Bar , 427 So.2d 1380, 1382 (Miss. 1983) (quoting Ex parte Marshall , 165 Miss. 523, 556, 147 So. 791, 798 (1933) ). The standard of proof in reinstatement cases is clear and convincing evidence. Wong v. Miss. Bar , 5 So.3d 369, 371 (Miss. 2008).
DISCUSSION
I. Jurisdictional Requirements
¶ 5. The petitioner must meet the jurisdictional requirements under Rule 12 of the Mississippi Rules of Discipline for the State Bar. Miss. R. Discipline 12; In re Benson , 890 So.2d 888, 890 (Miss. 2004) (citing In re Holleman , 826 So.2d at 1247 ).
¶ 6. Rule 12 requires that a petitioner (1) state the cause or causes for suspension or disbarment; (2) provide the names and current address of all persons, parties, firms, or legal entities who suffered pecuniary loss as a result of the improper conduct; (3) make full amends and restitution; (4) demonstrate that he or she has the necessary moral character to practice law; and (5) show that he or she possesses the requisite legal education to be reinstated. Miss. R. Discipline 12.7; see also In re Benson , 890 So.2d at 890.
¶ 7. Though not a jurisdictional requirement, the Bar's position is a factor for consideration as well. In re Benson , 890 So.2d at 890 (citing In re Holleman , 826 So.2d at 1248 ). The Bar supports Ogletree's reinstatement based on the fact that he took responsibility for his actions, the mitigating circumstances of his wife's illness during the period of the violation, and his aggressive and honest pursuit of rehabilitation.
A. Cause for Suspension
¶ 8. Ogletree, in his petition, accepted full responsibility for his actions in his representation of Buckley, which resulted in his suspension. In addition, he provided the Bar with copies of this Court's decision suspending him and discussed the matter thoroughly throughout his deposition. Through his petition and testimony, Ogletree sufficiently explained the reason for his suspension and accepted full responsibility.
B. Names and Current Addresses of all Persons, Parties, Firms, or Legal Entities Who Suffered Pecuniary Loss Due to Ogletree's Misconduct
¶ 9. Ogletree avers that no person, party, firm, or legal entity suffered any pecuniary loss or indirect pecuniary harm as a result of his misconduct. Ogletree has declared that no clients were harmed by his suspension, that none of his clients' cases were adversely affected, and that none his clients had trouble finding new counsel. The Bar does not contest this assertion. Ogletree reimbursed the Bar for costs.
C. Amends and Restitution
¶ 10. Ogletree also avers that he has made full amends and restitution to those hurt financially by his conduct. Specifically, Ogletree refunded to Buckley all costs *106 and losses-including overdraft charges-he incurred from a check that was refused for insufficient funds. In his deposition and petition Ogletree states that no other funds were owed to Buckley or any of his other clients. The Bar does not contest this assertion.
D. Requisite Legal Education for Reinstatement
¶ 11. Ogletree testified that he has completed twenty-four hours of continuing legal education. In addition, Ogletree asserts that he consistently reads summaries of new opinions from this Court and the Court of Appeals and that he has studied regulations related to workplace safety. Ogletree has also taken two week-long classes related to Occupational Safety and Health Administration ("OSHA") regulations and he currently serves as an authorized OSHA instructor for general industry. Furthermore, Ogletree testified that he has studied multi-party liability and construction issues, an area of law in which he intends to practice in the event of his reinstatement.
E. Rehabilitation and Requisite Moral Character
¶ 12. Ogletree provides the following evidence as proof he has demonstrated the necessary moral character to be reinstated to the practice of law.
1. Letters of Support
¶ 13. Ogletree submitted twelve letters of support for his reinstatement.[2] Chip Glaze, Director of the Lawyer and Judges Assistance Program ("LJAP"), wrote that Ogletree had met the criteria for fitness to practice law. Every letter submitted supported Ogletree's skill and fitness for the practice of law. Moreover, these letters uniformly state that Ogletree has been both honest and remorseful about the actions that resulted in his suspension and express provide high opinions of Ogletree's honesty, humility, and dedication to his community.
2. Employment Since Suspension
¶ 14. Ogletree testified that he ceased to practice law in the fall of 2012, almost a year before his suspension. During that time, Ogletree worked as an automobile salesman in order to "pay the bills." After Ogletree's suspension in 2013, he worked as a construction safety worker. Since August of 2013, Ogletree has been employed by the Alabama Department of Transportation.
3. Mental and Emotional Status
¶ 15. The Bar reported that, during his deposition, Ogletree appeared to be mentally fit and without apparent medical problems. Ogletree testified that he does not use illegal drugs, that he does not abuse alcohol, that he no longer suffers from depression, and that he generally is in good health. Ogletree contended that his depression manifested after his wife's first brain tumor from 2001 to 2002. He testified that he felt "helpless and despair" that he had never felt before. As a result, Ogletree's depression was considered by this Court to be a mitigating factor in the evaluation of his actions and, in turn, his suspension. Ogletree , 226 So.3d at 84.
¶ 16. Since Ogletree had asserted that his depression was an underlying cause of the disciplinary matter, the Complaint Tribunal ordered that he be referred to LJAP for evaluation. Ogletree had submitted to the LJAP regarding treatment for his depression prior to his disciplinary hearing.
*107 Ogletree underwent a full psychiatric assessment on referral from LJAP.
¶ 17. Ogletree successfully addressed his depression and self-esteem issues through his participation in LJAP. He began to rebuild his self-esteem, and his depression diminished. On April 18, 2017, Ogletree's psychiatrist, Andrew Bishop, M.D., opined that Ogletree was "doing well mentally and physically and [is] well adjusted socially in [his] home life and occupational life." Dr. Bishop further observed that, "[t]here is no medical or psychological contraindication to [Ogletree's] practicing law."
4. Civic, Church, and Charitable Involvement
¶ 18. Ogletree's civic and charitable involvement is limited. In particular, his wife was recently diagnosed with thyroid cancer, separate and apart from the brain tumors that she was diagnosed with in 2002. As noted above, Ogletree's work forced him to travel "four or five" days a week, and he had to be available at all times to assist his wife. Ogletree asserted that, when he is home, he tries "to take care of the grass, ... the house, ... and what needs to be done for [his wife]." As a result of his obligations to his family and work, Ogletree contends he has little to no spare time.
¶ 19. However, Ogletree testified that he does attend Meadow Grove Baptist Church, where he attends Sunday school classes and participates in clothes and food drives. In addition, Ogletree has provided monetary donations to St. Jude Hospital.
F. Future Plans
¶ 20. Ogletree testified that, if his petition is granted, he planned to continue his current line of work-but in a legal capacity. Ogletree stated that he has the requisite knowledge to practice law and believes that, were he readmitted to the practice of law, he could benefit his clients. Ogletree asserted that he has no intention, for the time being, of returning to private practice.
G. Recommendation of the Bar
¶ 21. After conducting a deposition of Ogletree and an investigation into the merits of his Petition for Reinstatement, the Bar recommends that Ogletree be reinstated to the practice of law.
II. Analysis and Decision
¶ 22. This Court has exclusive and inherent jurisdiction over matters pertaining to attorney discipline and is the final judge in such proceedings. James v. Miss. Bar , 962 So.2d 528, 532 (Miss. 2007) ; Shah v. Miss. Bar , 962 So.2d 514, 521 (Miss. 2007). The fundamental issue in a reinstatement case is "whether [the attorney] has rehabilitated himself in conduct and character since the suspension was imposed." In re Steele , 722 So.2d 662, 664 (Miss. 1998).
¶ 23. As noted above, Ogletree conceded that he had commingled client funds. This Court has held that "[t]here may be worse sins, but the ultimate wrong of a lawyer to his profession is to divert clients' and third parties' funds entrusted to him to an unauthorized use." Haimes v. Miss. Bar , 601 So.2d 851, 855 (Miss. 1992). Accordingly, "[a] lawyer guilty of such conduct exhibits a character trait totally at odds with the purposes, ideals, and objectives of our profession." Id.
¶ 24. This Court has granted petitions for reinstatement filed by attorneys under similar circumstances as Ogletree's. For instance, this Court considered the readmittance of John Allen Derivaux, Jr., an attorney whose legal practice was focused primarily in real estate. Derivaux v. Miss. Bar , 226 So.3d 97, 98 (Miss. 2016). As a part of his real-estate practice, Derivaux *108 had a title-agency agreement with a title-insurance company which allowed him to write and sell title-insurance. The agreement was terminated in January 2009, but Derivaux continued to hold himself out to lenders and third parties as a title-insurance agent. Id. Derivaux admitted holding out funds at closings for title insurance that were never transferred from his trust account. Id. He also acknowledged altering forms used in his previous real estate transactions by "cutting" and "pasting" information in such a way that the old forms appeared authentic. Id. This Court disciplined Derivaux by suspending him from the practice of law for two years. Id. Like Ogletree, Derivaux's misconduct stemmed from personal matters. His wife died suddenly in 2010, and as a result, Derivaux became careless in his legal practice. Id. at 100. Like Ogletree, Derivaux participated in LJAP, which attested that Derivaux had fully complied with all requirements of the program, including one-on-one counseling sessions with a program-approved psychiatrist. Id. Upon his petition for reinstatement this Court found that Derivaux had exhibited both moral and professional rehabilitation and granted his petition for reinstatement. Id. at 101.
¶ 25. Likewise, this Court considered the readmission of attorney Kenneth A. Pels, Sr., who was suspended for the commingling of client funds. Miss. Bar v. Pels , 708 So.2d 1372 (Miss. 1998). Pels had placed settlement funds in an account used for both business operations and for personal expenses and then allowed the balance to drop below the amount needed to satisfy third-party claims against the client's funds. Id. at 1373. Like Ogletree, no evidence was adduced in Pels that the attorney had engaged in dishonesty, misrepresentation to his client, lying to the disciplinary authorities, or using his client's funds for personal purposes. Id. at 1375. Pels was disbarred in the District of Columbia, but when the matter came before this Court for reciprocal discipline, we found that, given the totality of the circumstances, the protection of the legal profession was best served by a thirty-day suspension. Id. at 1376.
¶ 26. Turning to the instant case, this Court finds that the evidence of Ogletree's rehabilitation rises at least to the level of what was presented in Derivaux and Pels . This Court previously acknowledged that, while Ogletree's conduct was "certainly careless and possibly negligent[,] ... he did not seem to have an intent to steal. Ogletree [had] no prior disciplinary history, nor did he lie to his clients or to disciplinary authorities." Ogletree , 226 So.3d at 85. Moreover, like Derivaux, this Court previously characterized Ogletree's mental state as a mitigating factor "that at least implicitly caused Ogletree's lapses in judgment." Id. at 87. While Derivaux, Pels, and Ogletree received varied punishments, each demonstrated that he possessed the requisite character to be reinstated to the practice of law.
¶ 27. The complaint tribunal found that, before Ogletree could be reinstated, he must be evaluated by LJAP and complete any treatment determined and recommended by LJAP. Further, he was ordered to provide proof that he had retained an accountant or bookkeeper to institute a system of banking, accounting, and bookkeeping in accordance with Rule 1.15 of the Mississippi Rules of Professional Conduct. Finally, Ogletree was required to notify all of his clients with active matters pending that he had been suspended from the practice of law within thirty days of this Court's entry of the opinion and final judgment.
¶ 28. While Ogletree has satisfied the first two requirements, he admitted that he did not file the necessary affidavits until *109 April 5, 2017. Rule 12.2 states, "[i]n cases of suspension pending satisfaction of conditions precedent, reinstatement shall not be permitted except upon proof that the conditions have been met." However, Ogletree had no clients at the time of his suspension, nor was he involved in any lawsuits filed in Mississippi. Therefore, both Ogletree and the Bar contend that Ogletree's failure to timely file the affidavits should not be considered fatal to his petition. We agree.
¶ 29. After reviewing Ogletree's petition, the Bar's response, and all of the evidence in the record, this Court finds that Ogletree has met the jurisdictional requirements of Rule 12 and has provided clear and convincing evidence of his rehabilitation in conduct and character so as to convince a reasonable person that he has been reformed. Accordingly, this Court grants Ogletree's petition for reinstatement.
CONCLUSION
¶ 30. For the foregoing reasons, this Court grants Ogletree's petition for reinstatement to the practice of law.
¶ 31. PETITION OF ROBERT BRYAN OGLETREE FOR REINSTATEMENT TO THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI IS GRANTED.
RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.

While Ogletree initially denied the Bar's allegations in his answer to the Bar's Formal Complaint, he admitted to the facts submitted by the Bar and fully acknowledged wrongdoing at the time of his discipline hearing. Further, he entered into a stipulation of facts in which he formally admitted to the alleged wrongdoing. See paragraph 8, infra.

Letters were written by Edward Currie, Jr., Timothy Moore, Donnie Bell, Don McGraw, Jamie Priest, Patrick Rand, Jack Brenemen, Andrew Bishop, Chip Glaze, Stacy Ottnat, Katherine Lewis, and David Sullivan.